[Civ. No. 21971. Third Dist. Aug. 21, 1984.]

GLENDE MOTOR COMPANY, Petitioner, v.
THE SUPERIOR COURT OF SUTTER COUNTY, Respondent;
UNITED CALIFORNIA BANK et al., Real Parties in Interest.

**COUNSEL**

Wright, Britton, Coder & Tuel, Wright & Britton and Harold C. Wright for Petitioner.

No appearance for Respondent.

Rich, Fuidge, Marsh & Morris, Thomas Marsh, Martin J. Haley, Downey, Brand, Seymour & Rohwer and Ronald N. Paul for Real Parties in Interest.

OPINION

SIMS, J.—In this case, the parties dispute whether a settlement agreement was reached pursuant to procedures set forth in section 998 of the Code of Civil Procedure.[1] We hold, among other things, that a qualified acceptance of a section 998 offer (hereafter 998 offer) constitutes a counteroffer that serves to revoke the offeree's power to accept the 998 offer.

FACTUAL AND PROCEDURAL HISTORY

Petitioner Glende Motor Company (hereafter Glende) sells new cars. In the action below Glende is suing its landlords, real parties in interest (hereafter defendants), for damages for failure to pay over fire insurance proceeds. Glende contends it is entitled to reimbursement for its costs of restoring the leasehold premises after a fire that occurred in October 1979.

Each defendant answered Glende's complaint and also filed a separate cross-complaint against Glende. A pretrial order provided that issues raised by some affirmative defenses and cross-actions would be tried to the court while other issues would be tried to a jury. Trial was ordered bifurcated (see § 1048) so that some issues would be tried in a first phase of trial without a jury. Other issues related to certain cross-complaints were also to be tried to the court contemporaneously with the second phase of trial before a jury. The first phase court trial failed to dispose of the action.

On May 7, 1982, after the taking of evidence but before decision in the first trial, and 10 days before the second phase trial began, defendants joint-

[1]All statutory references are to the Code of Civil Procedure unless otherwise indicated.

ly served on Glende a document, set forth in the margin,[2] entitled "Offer to Compromise Before Trial" pursuant to section 998. The document in substance offered Glende a judgment for the remainder of the insurance proceeds held by defendants (about $190,000) with a provision that Glende could retain funds ("believed to be $9500") originally disbursed to it by defendant United California Bank (hereafter UCB).

On May 16, Glende communicated to defendants an offer to settle for the amount set forth in the 998 offer contingent upon execution of a new lease agreement on certain terms.

On May 17, the morning set for the second phase of trial, Glende's counsel went to chambers and asked the court to delay commencement "because it appeared that a settlement had been reached." He also asked to file a document entitled "Plaintiff's Notice of Acceptance of Offer to Compromise." He was granted the delay in trial and was informed that the document would have to be file-stamped at the clerk's office. On the way there he met the attorney for UCB who handed him an envelope containing a court message: "This letter is to notify you that defendant United California Bank hereby withdraws all settlement offers made to plaintiff Glende Motors in the above-entitled action."

The evidence is in conflict with respect to whether, on the 17th, Glende's counsel gave a copy of the "Notice of Acceptance, etc." to counsel for

---

[2]The text of defendant's offer to compromise is set forth in full as follows: "Defendants UNITED CALIFORNIA BANK, a California corporation, as Trustee for the Estate of Gilbert D. Williamson, Geraldine Michelson, [sic] individually, and Barbara Smith, individually offer to allow judgment to be taken against them collectively in the total amount calculated as follows: [¶] 1. The sum of $143,736.43 deposited in the Bank of America Chico Branch pursuant to Court Order on or about August 21, 1980; plus [¶] 2. All interest accrued thereon to the date of acceptance of this offer and according to the Bank's figures which we understand substantially exceed $19,000 at this point (the actual Bank interest figures will control); plus [¶] 3. The remainder of the $20,000 delivered to the United California Bank by Universal Underwriters Insurance Company and not yet distributed to Glende Motor Company by the Bank which amount is believed to be $10,500; and [¶] 4. Glende Motor Company as a part of this judgment may retain the amounts already received from the Bank out of the above-mentioned $20,000 which amount is believed to be $9,500; and [¶] 5. It is the intent of this offer that all monies mentioned above be received from the Chico Branch of Bank of America on the one hand and United California Bank on the other (in terms of the mechanical process) and the Defendants mentioned below will sign a stipulation for Court Order and all other necessary papers required for the immediate distribution of the monies to Glende Motor Company upon Glende Motor Company's acceptance of this offer. [¶] As a part of the above offer to compromise, each party will bear his own costs and for purposes of this offer, costs are determined to include any and all attorney's fees accrued in this litigation. [¶] If this offer to compromise is not accepted and notice given by Plaintiff within the time provided by § 997 [sic] of the Code of Civil Procedure, Defendants, and each of them, expressly deny and shall deny that the sum or any other sum is, or shall be, due or owing from Defendants, or any of them, to Plaintiff."

UCB admits that the reference to "§ 997" in the offer was inadvertent and that the offer intended to refer to "§ 998."

defendant Smith before UCB's revocation was delivered. The evidence is also in conflict on the question whether Smith's counsel was authorized by UCB to receive an acceptance of the 998 offer. After receiving UCB's envelope, Glende's attorney filed his "Notice of Acceptance, etc."[3] and a copy of the defendants' offer of compromise.

Glende's "Notice of Acceptance, etc." on its face contained different terms from those in defendants' offer. Among these were the requirement that *all sums* on deposit with Bank of America be released to Glende and the insistence that Glende be paid interest on the $10,540.17 received by UCB. Moreover, while the offer made no mention of the disposition of the cross-complaints, the purported acceptance expressly provided that all cross-complaints shall be dismissed with prejudice. (See fn. 3, *ante.*)

Because the parties disputed whether a settlement had been achieved, the trial was taken off calendar. Glende then filed a written notice of motion to compel entry of judgment, contending a statutory settlement pursuant to section 998 had been achieved. UCB opposed the motion. The parties submitted declarations concerning their negotiations and the matter was heard. The trial court denied the motion and Glende petitioned this court for issuance of a writ of mandate to direct the trial court to enter judgment.

DISCUSSION

I

■ ■■■■ Glende first contends the trial court was powerless to deny the motion requesting entry of judgment.[4] Glende notes that section 998,

---

[3]Glende's "Notice of Acceptance of Offer to Compromise" reads as follows: "NOTICE IS HEREBY GIVEN that Plaintiff, GLENDE MOTOR COMPANY, hereby accepts the offer made by defendants, and each of them, to have judgment taken against defendants, and each of them, in the above-entitled action, as set forth herein: [¶] a. All sums presently on deposit with the Bank of America, pursuant to order of the above-entitled Court, together with all interest thereon accrued and payable through the date of payment to plaintiff, are to be released forthwith to plaintiff; and [¶] b. The sum of $10,540.17, received by defendant United California Bank October 31, 1979 from Universal Underwriters Insurance Company, together with interest thereon accrued and payable through the date of payment to plaintiff, shall be paid to plaintiff forthwith; [¶] c. All cross-complaints presently filed by each and all of the defendants, regardless of the type or form of relief sought, shall be ordered dismissed forthwith, with prejudice; and [¶] d. Each party shall bear their own [*sic*] costs of suit. Such costs of suit are deemed to include attorneys fees."

[4]The motion was authorized by section 664.6, which provides: "If parties to pending litigation stipulate, in writing or orally before the court, for settlement of the case, or a part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." (Stats. 1981, ch. 904, § 2, p. 3437.) Since a properly accepted 998 offer constitutes a stipulation for entry of judgment (*Rappenecker* v. *Sea-Land Service, Inc.* (1970) 93 Cal.App.3d 256, 262-263 [155 Cal.Rptr. 516]), section 664.6 applies to section 998 compromise agreements.

subdivision (b) is couched in mandatory terms:[5] "If such offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly."[6] Glende argues that when the trial court is presented with the documents described in the statute its function is ministerial; it must enter the judgment, and the sole remedy of a protestor is to attack the judgment.

The argument has some merit but does not apply to these facts. ■ A judgment entered pursuant to a properly accepted 998 offer is a stipulated

---

[5]Having participated in the preparation and service of a document that looked like a 998 offer, was presented as a 998 offer, and undoubtedly felt like a 998 offer, UCB now contends it wasn't a 998 offer at all. UCB asserts that defendants' offer could not have been a 998 offer, as a matter of law, because subdivision (b) of section 998 requires service of the offer at least 10 days prior to commencement of trial and trial commenced when the first phase of the bifurcated trial began, so that defendants' offer, served between the first and second phases of trial, was made too late. We conclude UCB was right the first time.

Section 998 subdivision (b) provides in relevant part that the offer must be served, "Not less than 10 days prior to commencement of the trial as defined in subdivision 1 of Section 581 . . . ." The last sentence of section 581, subdivision 1, reads: "A trial shall be deemed to be actually commenced at the beginning of the opening statement of the plaintiff or his counsel, and if there shall be no opening statement, then at the time of the administering of the oath or affirmation to the first witness, or the introduction of any evidence." Thus, for purposes of section 998, we believe section 581, subdivision 1, simply defines the point in time when a trial—any trial—commences; it does not preclude service of a 998 offer between phases of a bifurcated trial.

We see no reason why a party should not be able to file a 998 offer before the second phase of a bifurcated trial so as to take advantage of the useful settlement pressure of potential cost sanctions allowed by the statute. (See *Cover* v. *Chicago Eyeshield Co.* (7th Cir. 1943) 136 F.2d 374, cert. den. (1943) 320 U.S. 749 [88 L.Ed. 445, 64 S.Ct. 53], holding that under the analogous federal statutory settlement rule an offer was effective when made after a judgment of copyright infringement was entered but before the hearing on damage accounting had begun.)

[6]Portions of section 998 material to these proceedings are as follows: "(a) The costs allowed under Section 1031 and 1032 shall be withheld or augmented as provided in this section. [¶] (b) Not less than 10 days prior to commencement of the trial as defined in subdivision 1 of Section 581, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken in accordance with the terms and conditions stated at that time. If such offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly. If such offer is not accepted prior to trial or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial. [¶] (c) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment, the plaintiff shall not recover his costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court, in its discretion, may require the plaintiff to pay the defendant's costs from the date of filing of the complaint and a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the defendant. [¶] (d) If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment, the court in its descretion may require the defendant to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the plaintiff, in addition to plaintiff's costs. . . ."

judgment. (*Rappenecker* v. *Sea-Land Service, Inc.*, *supra*, 93 Cal.App.3d at p. 263.) If a material term of a stipulation for judgment is ambiguous, judgment cannot be entered until the ambiguity is appropriately resolved. (*Rooney* v. *Vermont Investment Corp.* (1973) 10 Cal.3d 351, 369 [110 Cal.Rptr. 353, 515 P.2d 297].) Here, the documents of offer and acceptance presented to the trial judge failed to provide him with sufficiently clear information to allow entry of judgment. The facial discrepancies between offer and acceptance presented material ambiguities concerning the judgment to be entered. ■ A writ of mandate does not lie to compel a clerk or judge to enter judgment upon an ambiguous stipulation that requires the clerk or judge to exercise a legal discretion as to the meaning of the stipulation. (*People* v. *Loewy* (1865) 29 Cal. 264, 266.) ■ In this case, the trial judge had no ministerial duty to enter judgment when presented with defendants' 998 offer and Glende's purported acceptance containing different terms.

## II

The evidence was undisputed that on May 16, before any acceptance of defendants' 998 offer, Glende responded to the offer by agreeing to accept the monetary amounts stated in the offer provided a new lease was executed on certain terms. We conclude these undisputed facts are fatal to Glende's contentions.[7]

■ UCB contends that Glende's qualified acceptance of May 16, which was conditioned on execution of a new lease, terminated the 998 offer as a matter of law. We agree in principle, concluding that Glende's qualified acceptance constituted a counteroffer that terminated its ability to accept defendants' offer.

In *T.M. Cobb Co.* v. *Superior Court* (1984) 36 Cal.3d 273 [204 Cal.Rptr. 143, 682 P.2d 338] our Supreme Court recently held that a 998 offer could be revoked by an express revocation before acceptance. (P. 283.) The court concluded general contract law principles should apply to 998 offers and acceptances where such principles neither conflict with the statute nor defeat its purpose of encouraging pretrial settlements. (P. 280; see also *Distefano* v. *Hall* (1968) 263 Cal.App.2d 380, 385 [69 Cal.Rptr. 691]; followed in *Ward* v. *Superior Court* (1973) 35 Cal.App.3d 67, 69 [110 Cal.Rptr. 501].)

---

[7]Because there is no dispute of fact with respect to the dispositive issue, we have no occasion to consider whether a motion brought pursuant to section 664.6 must be adjudicated upon principles applicable to summary judgments. (See *Mancina* v. *Hoar* (1982) 129 Cal.App.3d 796, 801 [181 Cal.Rptr. 347]; cf. *Corkland* v. *Boscoe* (1984) 156 Cal.App.3d 989, 994 [203 Cal.Rptr. 356].)

■ UCB's argument is based on familiar principles of contract law, summarized in *Landberg* v. *Landberg* (1972) 24 Cal.App.3d 742 at page 750 [101 Cal.Rptr. 335] as follows: "(1) a valid acceptance must be absolute and unqualified (Civ. Code, § 1585), and (2) qualified acceptance constitutes a rejection terminating the offer; it is a new proposal or counteroffer which must be accepted by the former offeror now turned offeree before a binding contract results. [Citations.]"

■ In our view, the process of settlement will best be served by allowing classic contract law to control, so that a nonstatutory counteroffer to a 998 offer serves to terminate the offeree's power to accept the offer.

While it is superficially true that a contrary rule (which would leave the 998 offer viable despite a nonstatutory counteroffer) might further some settlements, simply because the offer would be *there,* we believe many 998 offers would not be made at all.[8] If the 998 offeror were subject to a rule preserving the viability of the offer in the face of unlimited counteroffers, we think the overall attractiveness of the 998 offer as a settlement vehicle would be greatly diminished. Under such a rule, the offeree would have little incentive to respond seriously to the offer at the outset, since the offer's capacity for acceptance would be unaffected by counteroffers. The 998 offeror, like the man in the dunk tank, would often face the potential for frequent bombardment by "acceptances" or counteroffers of various uncharitable magnitudes (often requiring consultation with a client) during the last hectic days of preparation for trial, when 998 offers are most often made.

Moreover, we are loathe to complicate the law applicable to 998 offers and acceptances without good reason. Uniformity of rule simplifies the legal process, makes disputes less likely, and enables parties to settle their differences outside courts of law. Thus, to the extent permitted by the statute, we conclude classic contract principles should govern the process of acceptance of a 998 offer.[9] (See *T.M. Cobb Co.* v. *Superior Court, supra,* 36 Cal.3d at p. 281.)

---

[8]This rationale was announced by our Supreme Court in *T.M. Cobb Co.* v. *Superior Court, supra,* 36 Cal.3d at pages 281-282, in support of its holding of express revocability of a 998 offer.

[9]We do not suggest that a 998 offer terminates or loses its capacity for acceptance when another party to the action makes another 998 offer. Section 998 clearly contemplates that both plaintiffs and defendants may make statutory offers to each other, often simultaneously. The statute envisions that each offer should be capable of acceptance by the other party during the statutory time for acceptance unless revoked by the offeror or by a nonstatutory counteroffer. Our discussion here is limited to the effect of a nonstatutory qualified acceptance or counteroffer.

Despite these views, we were reluctant, at first glance, to apply to section 998 the rule that a qualified acceptance constitutes a counteroffer that terminates the offer. (See *Landberg* v. *Landberg, supra,* 24 Cal.App.3d at p. 750.) An integral part of the power of section 998 to encourage settlements is that an unaccepted offer, whether initiated by plaintiff or defendant, carries with it the potential for recovery of cost sanctions after trial. (See § 998, subds. (c) and (d).) We perceived a possibility of conceptual confusion in the event a qualified acceptance were held to "terminate" a 998 offer. If, after all, the offer were "terminated," how could it survive for the purpose of recovery of cost sanctions?[10]

The problem is one of the way a qualified acceptance or counteroffer is characterized. California law has generally held that a qualified acceptance or counteroffer affects the viability of the offer itself, so that "a qualified acceptance amounts to a new proposal or counteroffer *putting an end to the original offer* [citations]." (*Apablasa* v. *Merritt & Co.* (1959) 176 Cal.App.2d 719, 726 [1 Cal.Rptr. 500], italics added.) Thus the original offer is thought of as "terminated." (See *Landberg* v. *Landberg, supra,* 24 Cal.App.3d at p. 750.) This view is in accord with Williston, who finds that, "When an offer has been rejected, it ceases to exist . . . ." (1 Williston on Contracts (3d ed. 1957) § 51, p. 164.)

A somewhat different view is shared by Corbin and the Restatement Second of Contracts. These authorities focus not on the viability of the offer but rather on the offeree's power of acceptance. Thus, Corbin writes that, "In addition to its effect in creating a power of acceptance, a counter offer ordinarily terminates the power to accept the previously made offer to which it is a 'counter,' or reply, in the negotiation." (1 Corbin on Contracts (2d ed. 1963) § 90, p. 382.) The Restatement similarly provides that, "An offeree's power of acceptance is terminated by his making of a counter-offer, unless the offeror has manifested a contrary intention or unless the counter-offer manifests a contrary intention of the offeree." (Rest.2d Contracts, § 39, subd. 2.) Although this difference in characterization of the effect of a qualified acceptance would produce no different result in most cases, it is decidedly the better view in this case,[11] because it eliminates confusion with

---

[10]Subdivision (a) of section 998 avoids the conceptual problem posed by a "termination" of the offer by providing that an offer is "deemed withdrawn" when not accepted at the end of the statutory period.

[11]The Restatement characterization is also useful where an identical offer is made to a group of offerees. Assume a newspaper distributor tells a group of boys on a streetcorner that he will hire them to deliver newspapers at $5 per day each. One boy speaks up and says he will do it for $7 per day but not for $5. Under Williston's characterization the offer ceases to exist when the boy makes his counteroffer. The Restatement view is more useful, since it makes it clear that the power of the objecting boy to accept the original offer is terminated, leaving the offer viable with respect to other boys who have said nothing. The

respect to whether a 998 offer, once rejected, can remain viable for the purpose of recovery of cost sanctions.

Thus, we conclude that a qualified acceptance of a 998 offer, which contains terms or conditions materially different from those in the original offer, constitutes a counteroffer that terminates the power of the original offeree to accept the 998 offer.[12] Since Glende terminated its power to accept the 998 offer by its qualified acceptance of May 16, the trial court correctly refused to enter judgment.

## DISPOSITION

The alternative writ is discharged and the petition is denied.

Puglia, P. J., and Blease, J., concurred.

---

problem can arise where a party serves a single 998 offer on multiple adverse parties, promising to pay each of them the same amount in settlement. (Cf. *Hilliger* v. *Golden* (1980) 107 Cal.App.3d 394, 401 [166 Cal.Rptr. 33].)

[12]This rule need not stifle settlement negotiations. "A mere inquiry regarding the possibility of different terms, a request for a better offer, or a comment upon the terms of the offer, is ordinarily not a counter-offer." (Rest.2d Contracts, § 39, com. b, p. 106.)