[No. S011900. Dec. 24, 1990.]

GREGORY POSTER, Plaintiff and Appellant, v.
SOUTHERN CALIFORNIA RAPID TRANSIT DISTRICT et al.,
Defendants and Respondents.

**COUNSEL**

David Kyle for Plaintiff and Appellant.

Nouskajian & Cranert, Terrence L. Cranert and Joseph R. Serpico for Defendants and Respondents.

## OPINION

**BROUSSARD, J.**—In this case we must determine whether a counteroffer precludes acceptance of a statutory settlement offer under Code of Civil Procedure section 998,[1] and whether when a section 998 offer is served by mail, section 1013, subdivision (a) applies to extend the time to respond by five days.

## FACTS

The facts underlying this settlement controversy are not disputed. On March 17, 1984, plaintiff, Gregory Poster, was a passenger on a Southern California Rapid Transit District (SCRTD) bus when he was attacked by other passengers. He sustained serious injuries when he was thrown from and run over by the bus. On May 1, 1984, plaintiff filed a personal injury action against defendants, SCRTD and the bus driver.

On December 11, 1987, acting pursuant to section 998 and Civil Code section 3291, plaintiff served defendants with an offer to compromise the action for $150,000. The offer was served by mail with proof of service, and provided that if it was accepted and notice of acceptance was given within 30 days or prior to the commencement of trial, the offer could be filed with proof of acceptance and the clerk of the court would be authorized to enter judgment in accordance therewith.

Defendants received the offer on December 14, 1987, and engaged in further settlement negotiations with plaintiff. On December 16, 1987, defendants made a counteroffer to plaintiff in the amount of $75,000, which plaintiff refused to accept. On January 6, 1988, defendants offered $120,000 in settlement to plaintiff, to which plaintiff made no response.

On January 12, 1988, defendants advised plaintiff's attorney that they would accept the offer to compromise in the full amount of $150,000 and

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

sent a letter formally accepting the offer. Plaintiff acknowledged the acceptance and agreed that the matter would be removed from the calendar since a settlement had been reached. Notice of acceptance, in the form of a pleading instructing the clerk of the court to enter judgment pursuant to the terms of the offer, was mailed to plaintiff on January 14, 1988.

Plaintiff's attorney, however, subsequently informed defendants that plaintiff refused to honor the settlement agreement; thereafter, defendants noticed a motion to enforce the agreement and the matter was set for hearing. The motion to enforce settlement contained a declaration from defendants' counsel that plaintiff had never revoked the offer to compromise and that plaintiff had continually led defendants to believe that the offer to compromise was open for acceptance through the time that it was accepted.

At the hearing, plaintiff's counsel did not argue that plaintiff had revoked the offer to compromise, nor did he assert that he had ever informed defendants, during the course of the settlement negotiations, that he considered the offer to compromise to have been terminated by any discussions with defendants' counsel. Instead, counsel stated that after serving the offer to compromise he had consulted with an expert who advised that the extent and seriousness of plaintiff's injuries might be greater than at first thought; based on this new information, plaintiff had changed his mind about settling for $150,000. He argued that the settlement negotiations which had occurred after service of the offer to compromise operated as a counteroffer and as such effectively terminated the original offer, revoking defendants' power of acceptance.

The trial court found that the offer was properly accepted as required by statute and by the offer itself. It found the discussions between the parties during the time that the offer was open were simply settlement negotiations. To hold otherwise, the court determined, would serve to undermine the policy underlying section 998. The trial court ordered judgment in plaintiff's favor in the amount of $150,000.

Plaintiff appealed the judgment. The Court of Appeal concluded that section 998 offers to compromise, while revocable by the offeror, are not automatically revoked by a counteroffer since such a consequence would undermine the legislative intent of that section.

The Court of Appeal, however, went on to find that the acceptance of the statutory offer in this case was not timely, and accordingly reversed the judgment. In reaching this conclusion, the Court of Appeal held that section 1013, subdivision (a), which generally extends the time to respond by

five days when service is made by mail, does not apply to section 998 offers, and therefore did not serve to extend the time for acceptance.

DISCUSSION

1. *Does a counteroffer preclude acceptance of a statutory settlement offer under section 998?*

■ The Court of Appeal held that a statutory settlement offer made pursuant to section 998 is not revoked by a counteroffer and may be accepted until expressly withdrawn by the offeror or deemed withdrawn under the terms of section 998. In reaching this conclusion, the Court of Appeal rejected the reasoning of an earlier Court of Appeal decision in *Glende Motor Co.* v. *Superior Court* (1984) 159 Cal.App.3d 389, 396-398 [205 Cal.Rptr. 622]. As we explain, we conclude that the legislative purpose of section 998 supports the conclusion reached by the Court of Appeal in this case.

Section 998, subdivision (b) provides in part: "Not less than 10 days prior to commencement of trial, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken in accordance with the terms and conditions stated at that time. [¶] (1) If the offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly. [¶] (2) If the offer is not accepted prior to trial or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn . . . ."

Section 998 clearly reflects this state's policy of encouraging settlements. (See, e.g., *T. M. Cobb Co.* v. *Superior Court* (1984) 36 Cal.3d 273, 280 [204 Cal.Rptr. 143, 682 P.2d 338]; *Brown* v. *Nolan* (1979) 98 Cal.App.3d 445, 449 [159 Cal.Rptr. 469]; *Distefano* v. *Hall* (1968) 263 Cal.App.2d 380, 385 [69 Cal.Rptr. 691].) In order to encourage parties to accept reasonable settlement offers made pursuant to the section, subdivisions (c) and (d) of section 998 afford the offeror a remedy against a party who has failed to accept a statutory settlement offer that proves to be reasonable. Subdivision (c) provides that if an offer made by a defendant is not accepted and if the plaintiff fails to obtain a more favorable judgment, the plaintiff will be denied recovery of costs, shall pay defendant's costs from the time of the offer, and may be compelled to pay all of defendant's costs, including expert witness costs. Subdivision (d) provides that if an offer made by a plaintiff is not accepted and if the defendant fails to secure a more favorable judgment, the defendant may be required to pay expert witness costs.

Although the procedure established by section 998 is clearly intended to encourage settlements, the statutory language is silent on a number of issues

relevant to the application of the provision, including what conduct constitutes an acceptance, whether a statutory offer may be revoked by the offerer prior to the expiration of the statutorily designated period, and the effect of counteroffers on the viability of outstanding statutory settlement offers.

In *T. M. Cobb Co., Inc.* v. *Superior Court, supra*, 36 Cal.3d 273 (hereafter *T.M. Cobb*), our court, in concluding that an unaccepted offer made pursuant to section 998 could be revoked by the offeror prior to expiration of the statutory period, reasoned that general principles of contract law could properly be referred to in interpreting section 998. (36 Cal.3d at pp. 278-280.) The *T. M. Cobb* decision was careful to emphasize, however, that general contract principles should be invoked in applying section 998 "only where such principles neither conflict with the statute nor defeat its purpose . . . [citations]" (36 Cal.3d at p. 280), and the court in that case determined that the general principle that offers are revocable should be applied in the section 998 context only after concluding that the statutory policy of encouraging settlements would be best promoted by such a rule. (See 36 Cal.3d at p. 281.)

In asserting that defendants' counteroffer in the present case operated to revoke the section 998 offer, plaintiff relies on *Glende Motor Co.* v. *Superior Court, supra*, 159 Cal.App.3d 389, 396-398 (hereafter *Glende Motor*). In *Glende Motor*, the Court of Appeal, relying on the reference to general contract law principles in *T. M. Cobb, supra,* 36 Cal.3d 373, held that because under general common law contract principles a counteroffer which deviates from the terms of an offer generally operates to revoke the offer (see, e.g., *Landberg* v. *Landberg* (1972) 24 Cal.App.3d 742, 750 [101 Cal.Rptr. 335]), a nonstatutory counteroffer which deviates from the terms of a section 998 offer similarly operates to revoke the section 998 offer. (See *Glende Motor, supra*, 159 Cal.App.3d at p. 396.)

The Court of Appeal in this case, however, declined to follow *Glende Motor, supra*, 159 Cal.App.3d 389, reasoning that negotiation during the 30-day period provided for in section 998 is a normal occurrence and ought not to affect the right of the offeree to ultimately accept the statutory offer in a timely fashion. The court noted that to adopt the position stated in *Glende Motor* would affect every personal injury case where negotiations followed a statutory offer—negotiations which routinely involve the making of counteroffers—and expressed the view that such a ruling would have a negative effect on encouraging settlement. We agree with the Court of Appeal's conclusion in this regard.

In our view, the rule adopted in *Glende Motor, supra*, 159 Cal.App.3d 389, is more likely to discourage settlements and to confuse the

determination regarding the imposition of costs than the conclusion reached by the Court of Appeal in this case. The *Glende Motor* court itself recognized that section 998 was not intended to insulate the offeror from settlement negotiations for the 30-day period in which the section 998 offer was operative, and attempted to prevent its holding from stifling such negotiations by observing that "[a] mere inquiry regarding the possibility of different terms, a request for a better offer, or a comment upon the terms of the offer, is ordinarily not a counter-offer. [Citation.]" (*Glende Motor, supra,* 159 Cal.App.3d 389, 398, fn. 12.) This aspect of the *Glende Motor* decision, however, introduces a significant and undesirable uncertainty into the section 998 procedure, and will inevitably spawn numerous disputes over whether a communication from an offeree is a counteroffer which operates to revoke the statutory offer or merely an "inquiry regarding the possibility of different terms" which leaves the offeree free to accept the outstanding section 998 offer.

The legislative purpose of section 998 is better served by the bright line rule adopted by the Court of Appeal in this case, under which a section 998 offer is not revoked by a counteroffer and may be accepted by the offeree during the statutory period unless the offer has been revoked by the offeror.[2] Accordingly, we now adopt that rule and disapprove the Court of Appeal decision in *Glende Motor, supra,* 159 Cal.App.3d 389, to the extent that it is contrary to our conclusion.

2. *Is the time for acceptance extended under section 1013?*

■ The record discloses that plaintiff mailed the statutory offer to compromise on December 11, 1987. In computing the time permitted by the statute, and not counting December 11 (see § 12), the offer was open for 20

___

[2] The *Glende Motor* court expressed its apprehension that a rule preserving the viability of a section 998 offer in the face of numerous counteroffers might deter a potential offeror from making a section 998 offer in the first place because the offer could expose him to a "bombardment" of counteroffers from the opposing party shortly before trial. (*Glende Motor, supra,* 159 Cal.App.3d 389, 396.) Even if no section 998 offer is outstanding, however, an opposing party may make numerous settlement offers prior to trial which may have to be communicated to the client. Because an offeror remains free to revoke a section 998 prior to its acceptance, we do not believe that an offeror is likely to be deterred from making a section 998 offer by the fact that the offer will not be automatically revoked by the first counteroffer proffered by the offeree.

Indeed, the *Glende Motor* court itself recognized that "[s]ection 998 clearly contemplates that both plaintiffs and defendants may make statutory offers to each other, often simultaneously . . . ," and expressly disclaimed any intent to suggest "that a 998 offer terminates or loses its capacity for acceptance when another party to the action makes another 998 offer." (*Glende Motor, supra,* 159 Cal.App.3d 389, 396, fn. 9.) Since section 998 assumes that a party will not be deterred from making a statutory settlement offer even though a statutory counteroffer will not automatically revoke the offer, we see no reason for drawing a different conclusion with regard to a nonstatutory counteroffer.

days in December, but was not accepted by defendants until January 12, 1988, the 32d day. As noted, the Court of Appeal held that on these facts defendants' acceptance of the offer was not timely, concluding that the provisions of section 1013 affording a five-day extension for statutory deadlines when service is made by mail do not apply in the section 998 context. Defendants challenge the Court of Appeal's conclusion on the timeliness issue, and, as we shall explain, we agree with defendants that the Court of Appeal erred in finding their acceptance untimely.[3]

Section 1013, subdivision (a) provides in relevant part: "In the case of service by mail, . . . [t]he service is complete at the time of the deposit, but any prescribed period of notice and any right or duty to do any act or make any response within any prescribed period or on a date certain after the service of such document served by mail shall be extended five days if the place of address is within the State of California . . . ."

Section 1013, subdivision (a) has been described as "a procedural statute of general application" (*Simpson* v. *Williams* (1987) 192 Cal.App.3d 285, 289 [238 Cal.Rptr. 566]) and has been construed broadly to include within its ambit not only notices of motions, but numerous other types of notices and responses thereto. (E.g., *California Accounts, Inc.* v. *Superior Court* (1975) 50 Cal.App.3d 483 [123 Cal.Rptr. 304] [§ 1013 applies to extend the time to bring motion for further answers to interrogatories]; *Sinclair* v. *Baker* (1963) 219 Cal.App.2d 817 [33 Cal.Rptr. 522] [§ 1013 extends

---

[3] Defendants also raise a procedural objection, contending that the Court of Appeal should not have reached the timeliness issue because plaintiff did not object to the timeliness of their acceptance in the trial court. The Court of Appeal raised the timeliness issue sua sponte, concluding that it was appropriate for it to reach the question despite plaintiff's failure to raise the issue below because the issue of whether section 1013's five-day extension applies to a section 998 settlement offer presented purely a legal question as to which the facts were undisputed. (Cf., e.g., *Sea & Sage Audubon Society, Inc.* v. *Planning Commission* (1983) 34 Cal.3d 412, 417 [194 Cal.Rptr. 357, 668 P.2d 664].)

With respect to at least some procedural deadlines, however—for example, the expiration of the statute of limitations—it is clear that when a party fails to raise the issue in a timely fashion at the trial level, such a waiver cannot be overcome on appeal even if the undisputed facts demonstrate that a timely challenge would have been meritorious as a matter of law. (See, e.g., *Getz* v. *Wallace* (1965) 236 Cal.App.2d 212, 213 [45 Cal.Rptr. 910]. See generally 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 314, p. 345.)

In the present case, however, we need not decide whether similar considerations should invariably preclude the timeliness issue from being considered on appeal when a party has failed to challenge the timeliness of a section 998 acceptance at the trial court level. Because the Court of Appeal's decision in this matter has thrown into doubt the question whether section 1013's five-day extension applies in the section 998 context, we believe that it is appropriate to decide the issue on the merits in any event, in order to avoid confusion on a question that arises frequently in litigation. And because we conclude on the merits that defendants' acceptance was timely, there is no need to decide here whether plaintiff's failure to raise the issue at trial would preclude him from prevailing on appeal even if the acceptance had been untimely.

statutory time for filing a petition for administrative mandamus pursuant to § 1094.5]; *Montgomery* v. *Norman* (1953) 120 Cal.App.2d 855 [262 P.2d 360] [§ 1013 extended the 10-day period to answer where a demurrer for plaintiff's failure to post security was overruled and the defendant was granted 10 days to answer from the time he was given notice that plaintiff had posted an undertaking].) In general, adding five days for mailing pursuant to section 1013 has become a part of the mental calculations of most litigating attorneys.

By its terms, section 1013 appears clearly to apply to the time period prescribed by section 998 for accepting statutory offers of compromise. Section 1013 applies to the service by mail of a "notice or other paper" which would certainly include a section 998 settlement offer. And by specifically extending for five days "any prescribed period . . . to do any act or make any response" to any paper served by mail, section 1013 appears clearly to apply to the time period for accepting a statutory settlement offer.[4] In light of the language of section 1013, and the general applicability of its provisions, there appears to be no sound reason not to apply the statute in this context.

In concluding that section 1013 should not apply to section 998 offers that are served by mail, the Court of Appeal first noted that section 1013 specifically exempts from its provisions notices of intention to move for new trial, notice of intentions to move to vacate judgment, and notices of appeal. (§ 1013, subd. (a).) Consistent with the Legislature's exemption of notices of appeal, section 1013 has been held to be inapplicable to other statutes that set forth jurisdictional deadlines. (*County of Los Angeles* v. *Surety Ins. Co.* (1984) 162 Cal.App.3d 58 [208 Cal.Rptr. 263] [90-day jurisdictional time limit for court to enter summary judgment upon bail forfeiture held not to be extended 5 days for mailing by virtue of service by mail of original notice of forfeiture to bail bondsman].) Although the Court of Appeal recognized that section 998 "arguably does not contain a jurisdictional limit," it nonetheless employed arguments applicable only to situations where a jurisdictional limit is involved.

In our view, there is no basis to conclude that the 30-day limit of section 998 is jurisdictional. "A typical misuse of the term 'jurisdictional' is to treat it as synonymous with 'mandatory.' There are many time provisions, e.g., in procedural rules, which are not directory but mandatory; these are binding, and parties must comply with them to avoid default or other penalty. But failure to comply does not render the proceeding void . . . ." (2 Witkin,

---

[4] Under section 998, the 30-day period runs from the time the offer is "made." Because an offeror "makes" the offer by serving it in writing, when a section 998 offer is served by mail it is clear that the statutory period for response runs from the service by mail.

Cal. Procedure (3d ed. 1985) Jurisdiction, § 3, p. 368.) There is nothing in section 998 to support the conclusion that the 30-day limit was intended to be "jurisdictional" in the fundamental sense.

The Court of Appeal also relied on the general proposition that where there are two conflicting statutes, one a general procedural statute and the other a statute dealing with more specific rights and procedures, the specific statute is regarded as an exception to the general statute. (*Simpson* v. *Williams, supra*, 192 Cal.App.3d at p. 289.) Section 998, however, is not part of a specific procedural scheme that conflicts with section 1013. To the contrary, both are contained within the miscellaneous provisions of the Code of Civil Procedure and apply generally to all civil cases. We see no conflict between them that would support excepting section 998 from the general operation of section 1013.

Accordingly, we conclude that when a statutory settlement offer pursuant to section 998 is served by mail, the provisions of section 1013 apply and extend the 30-day period for acceptance of the offer by 5 days.

### DISPOSITION

The Court of Appeal decision is affirmed insofar as it concludes that defendants' counteroffer did not operate to revoke plaintiff's section 998 offer, but the decision is reversed insofar as it concludes that section 1013 is inapplicable to statutory settlement offers made pursuant to section 998. The matter is remanded to the Court of Appeal with directions to affirm the trial court's order enforcing the settlement agreement.

Defendants shall recover their costs on appeal.

Lucas, C. J., Mosk, J., Panelli, J., Eagleson, J., Kennard, J., and Arabian, J., concurred.