[No. F026588. Fifth Dist. May 7, 1999.]

MARIE GUZMAN, Plaintiff and Appellant, v.
VISALIA COMMUNITY BANK, Defendant and Respondent.

**COUNSEL**

Luke & Barron and Linda A. Luke for Plaintiff and Appellant.

Thomas E. Campagne; Clifford C. Kemper; and Allison S. Gong for Defendant and Respondent.

**OPINION**

**LEVY, J.**—Appellant, Marie Guzman, was laid off by her employer, respondent, Visalia Community Bank, as part of a "reduction in force." Thereafter, appellant filed a complaint alleging that respondent, through its president and chief executive officer, had engaged in sexual discrimination and had created a hostile work environment.

This appeal challenges the trial court's orders that granted summary judgment in respondent's favor and denied appellant's request to enforce respondent's Code of Civil Procedure[1] section 998 offer to compromise. We conclude that the trial court erred in refusing to enforce respondent's section 998 offer to compromise. Therefore, the issues regarding the validity of the summary judgment have been rendered moot.

### STATEMENT OF THE CASE AND FACTS

Since the substance of the underlying lawsuit is not relevant to our resolution of this appeal, the factual recitation is limited to the events surrounding the section 998 offer to compromise.

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

In an effort to settle the case, the parties appeared before a retired judge in March 1996. Respondent offered appellant $60,000, which appellant immediately rejected.

On May 2, 1996, respondent filed a motion for summary judgment to be heard on June 12. Appellant filed her response to the motion on May 16. On May 21, respondent mailed a section 998 offer to appellant, through her attorney, proposing to settle the case for $60,000.

Over the next few days, two telephone conversations took place between Linda A. Luke, counsel for appellant, and Clifford C. Kemper, counsel for respondent. The section 998 offer was only one of several topics the attorneys covered. Although Ms. Luke characterized this offer as "insulting and demeaning," a final decision on the offer was not specifically discussed.

On June 11, 1996, at approximately 4:30 p.m., the parties were informed of the court's tentative decision to grant respondent's summary judgment motion. Shortly thereafter, in accord with the Tulare County Superior Court Rules, Ms. Luke faxed a letter to Mr. Kemper stating that she intended to present oral argument in opposition to the motion.

That same evening, at approximately 11:15 p.m., Ms. Luke faxed a second letter to Mr. Kemper. This letter was an acceptance of the section 998 settlement offer.

On June 12, the hearing was held. The first issue decided by the court was whether Ms. Luke's attempt to accept the section 998 settlement offer was effective. Following testimony from the attorneys, the court ruled that Ms. Luke's disparagement of the offer during her telephone conversations with Mr. Kemper constituted a rejection and thus, the court would not enforce the settlement. The court thereafter granted respondent's summary judgment motion.

## DISCUSSION

Appellant contends the trial court erred when it refused to enforce respondent's statutory settlement offer. According to appellant, the offer was still operative when she accepted it the day before the summary judgment motion was heard.

As noted above, respondent's counsel, Clifford Kemper, served a section 998 offer to settle the action for $60,000 on appellant's counsel, Linda Luke, approximately three weeks before the date scheduled for the hearing on the

summary judgment motion. This was respondent's second $60,000 offer. Respondent's first offer, made two months earlier at a settlement conference, had been immediately rejected by appellant.

Shortly after Mr. Kemper mailed this offer, he and Ms. Luke spoke at least twice by telephone. At issue is whether the comments Ms. Luke made during one of these conversations constituted a rejection of the offer. However, since these conversations did not generate any type of written record, the trial court was required to solicit testimony from both attorneys regarding their recollection of what transpired.

The trial court found Mr. Kemper's testimony to be "straightforward and truthful" and thus relied on that testimony in making its findings. However, the court also noted that Ms. Luke did not dispute Mr. Kemper's account of his conversation with her. Nevertheless, both attorneys had difficulty remembering the details of these telephone conversations.

Mr. Kemper testified he recalled Ms. Luke saying she thought the offer was insulting and demeaning. It provided nothing more than what respondent had offered at the settlement conference. Ms. Luke also stated that the offer did not cover her attorney fees.

However, this exchange was very brief. Mr. Kemper characterized the conversation as having "no major depth." Ms. Luke did not specifically say "I accept" or "I reject the offer." Rather, Mr. Kemper recalled "she told me that she was insulted, and I think she said demeaning. But we didn't discuss it anymore. We went on to a different subject, as a matter of fact." Nevertheless, Mr. Kemper assumed that, by disparaging the offer, Ms. Luke was rejecting it.

The trial court also reached this conclusion. The court found "that Ms. Luke's statement to Mr. Kemper that the May 21, 1996 offer of compromise was 'insulting' and 'demeaning' was, without question, a rejection of the offer." In contrast, Ms. Luke testified that she was attempting to negotiate further.

The applicable version of section 998 provides, in part:

"(b) Not less than 10 days prior to commencement of trial, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken in accordance with the terms and conditions stated at that time.

"(1) If the offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly.

"(2) If the offer is not accepted prior to trial or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial."

Section 998 reflects this state's policy of encouraging settlements. (*Poster v. Southern Cal. Rapid Transit Dist.* (1990) 52 Cal.3d 266, 270 [276 Cal.Rptr. 321, 801 P.2d 1072].) The goal has been to apply this section in a manner which best promotes its purpose. (*T.M. Cobb Co.* v. *Superior Court* (1984) 36 Cal.3d 273, 283 [204 Cal.Rptr. 143, 682 P.2d 338].) However, the statutory language is silent on a number of issues relevant to the application of the provision. For example, section 998 fails to provide guidance on what conduct constitutes an acceptance, whether a statutory offer may be revoked by the offeror before the statutorily designated period expires, and what effect a counteroffer has on the viability of an outstanding statutory settlement offer. (*Poster* v. *Southern Cal. Rapid Transit Dist., supra,* 52 Cal.3d at pp. 270-271.)

■ The settlement and compromise process encompassed by section 998 is contractual. Consequently, the courts have referred to general contract principles to interpret the gaps in the statutory language. (*T.M. Cobb Co.* v. *Superior Court, supra,* 36 Cal.3d at p. 280.) However, contract law does not necessarily resolve the issue. These principles are invoked only where they "neither conflict with the statute nor defeat its purpose." (*Ibid.*)

In *T.M. Cobb Co.* v. *Superior Court,* the court applied the general contract principle that an offer may be revoked by the offeror any time prior to acceptance. Thus, the court held that an unaccepted offer made pursuant to section 998 could be revoked prior to expiration of the statutory period. The court concluded that this application of contract law would encourage parties to make offers pursuant to section 998 and would ensure that those offers were based on as complete an understanding of the facts as possible. (36 Cal.3d at pp. 278, 281.)

However, in *Poster* v. *Southern Cal. Rapid Transit Dist.,* the court declined to adopt a common law contract principle when interpreting section 998. The court held that, contrary to the general rule, a counteroffer which deviates from the terms of the section 998 offer does not operate to revoke that offer. The court reasoned that negotiation during the 30-day period provided for in this section is a normal occurrence and ought not to affect the right of the offeree to ultimately accept the statutory offer in a timely fashion. The court concluded that if the general contract principle were applied, it would act to discourage settlements. (52 Cal.3d at p. 271.)

The *Poster* court further noted that, if a counteroffer operated to revoke the statutory offer, there would be a significant and undesirable uncertainty

introduced into the section 998 procedure. Disputes would arise over whether a communication from an offeree was a counteroffer that operated to revoke the statutory offer or merely an inquiry regarding the possibility of different terms that would leave the offeree free to accept the outstanding section 998 offer. (*Poster* v. *Southern Cal. Rapid Transit Dist., supra,* 52 Cal.3d at p. 272.) Thus, the court concluded that the "legislative purpose of section 998 is better served by the bright line rule . . . under which a section 998 offer is not revoked by a counteroffer and may be accepted by the offeree during the statutory period unless the offer has been revoked by the offeror." (*Ibid.*)

■ The statutory gap on the issue of what conduct constitutes either an acceptance or a rejection under section 998 has not yet been filled. Thus, the analysis must begin with the applicable contract law principles.

■ "It is hornbook law that an unequivocal rejection by an offeree, communicated to the offeror, terminates the offer." (*Beverly Way Associates* v. *Barham* (1990) 226 Cal.App.3d 49, 55 [276 Cal.Rptr. 240].) Once this occurs, the offeree cannot later purport to accept the offer and thereby create an enforceable contract. (*Ibid.*) However, a manifestation of an intent not to accept, short of an unequivocal rejection, can also terminate the offer. (Rest.2d Contracts, § 38.) If the offeree's words or acts either indicate that the offeree is declining the offer or justify the offeror in so inferring, the offeree will be considered to have rejected the offer. (*Burton* v. *Coombs* (Utah 1976) 557 P.2d 148, 149.)

On the other hand, it is not necessarily true that any communication other than an unequivocal acceptance is a rejection. (1 Williston on Contracts (4th ed. 1990) Duration & Termination of Offers, § 5:3, p. 633.) Thus, an acceptance is not invalidated by the fact that it is "grumbling," or that the offeree makes some simultaneous "request." (1 Corbin on Contracts (rev. ed. 1993) § 3.30, pp. 472-473.) Nevertheless, it must appear that the "grumble" does not go so far as to make it doubtful that the expression is really one of assent. (*Id.* at p. 475.) Similarly, the "request" must not add additional or different terms from those offered. Otherwise, the "acceptance" becomes a counteroffer. (Rest.2d Contracts, § 59.)

The interpretation of the purported acceptance or rejection of an offer is a question of fact. (1 Corbin on Contracts, *supra,* § 3.30, p. 477.) Further, based on the general rule that manifested mutual assent rather than actual mental assent is the essential element in the formation of contracts, the test of the true meaning of an acceptance or rejection is not what the party making it thought it meant or intended it to mean. Rather, the test is what a

reasonable person in the position of the parties would have thought it meant. (2 Williston on Contracts, *supra*, Acceptance of Offers, § 6:57, pp. 682-686.)

 Here, Ms. Luke was extremely critical of respondent's section 998 offer. Although Ms. Luke did not unequivocally reject the offer, Mr. Kemper interpreted her comments as doing so. Whether Mr. Kemper was justified in construing Ms. Luke's reaction to the offer as a rejection is, under contract law, a question of fact. Thus, if general contract principles were to apply to this aspect of section 998, the trial court's finding that the offer was rejected would be sustainable on appeal.

However, as is evident from the issues in this case, applying common law contract principles to determine whether a statutory offer has been rejected "introduces a significant and undesirable uncertainty into the section 998 procedure." (Cf. *Poster* v. *Southern Cal. Rapid Transit Dist., supra,* 52 Cal.3d at p. 272.) The published opinions grappling with the issue of what conduct constitutes a rejection are legion. If equivocal words or conduct can terminate a section 998 offer, disputes regarding whether the offer was still open when accepted are inevitable.

Further, applying general contract law does not further the policy of encouraging settlements. As noted in *Poster* v. *Southern Cal. Rapid Transit Dist.,* negotiation during the 30-day period provided for in section 998 is a normal occurrence. Such negotiation routinely involves requests for better offers, comments upon the terms, inquiries regarding the possibility of different terms, and counteroffers. The *Poster* court concluded that, if it were to hold that such negotiations could terminate the statutory offer, the ruling would have a negative impact on encouraging settlement. (*Poster* v. *Southern Cal. Rapid Transit Dist., supra,* 52 Cal.3d at p. 271.)

Similarly, one would expect the conduct present here, i.e., criticism of the offer, to be a normal part of the negotiating strategy. Criticizing the offer can be viewed as an indirect request for a better offer. Thus, construing disparaging comments as a rejection of the offer under section 998 would negatively impact settlement.

In sum, both the policy of encouraging settlement and the desirability of maintaining certainty in the section 998 procedure compel the conclusion that general contract principles should not apply to the determination of whether the offer has been rejected. Rather, as with counteroffers in the section 998 context, the legislative purpose behind that provision is better served by a "bright line rule." Thus, in the absence of an *unequivocal* rejection of a section 998 offer, the offer may be accepted by the offeree during the statutory period unless the offer has been revoked by the offeror.

Based on the timing of appellant's acceptance, the trial court found two additional grounds for denying appellant's motion to compel compliance with the statutory offer. However, neither one justifies the denial.

As noted above, the acceptance was faxed to respondent's counsel the night before the hearing on the summary judgment motion. However, earlier that day, appellant had been informed that the trial court's tentative ruling was to grant summary judgment. In response to the tentative ruling, appellant's counsel faxed a letter to respondent stating that she intended to argue the motion. If appellant had not requested oral argument in this manner, the tentative ruling would have become the order of the court pursuant to a local court rule.

The trial court found that appellant's notice to respondent that she intended to argue the summary judgment motion constituted a written rejection of the section 998 offer. However, it is difficult to fathom the rationale behind this ruling. Appellant's oral argument request neither referred to, nor had any connection with, respondent's section 998 offer. Thus, appellant's decision to argue the summary judgment motion should not be construed as the manifestation of an intent to reject the outstanding section 998 offer.

The court further concluded that public policy mandated its ruling. The court stated it could "envision no scenario where any Court could ever issue a tentative ruling if a party could—after receiving an adverse tentative ruling—accept an offer of compromise, which it had previously rejected, on the basis that the offeror had not formally revoked its compromise offer." The court was also concerned with forcing an offeror to accept a previously rejected offer after the offeror detrimentally relied on the rejection.

However, as discussed above, for purposes of section 998, the offer had not been rejected. Additionally, since a statutory settlement offer is operative for a maximum of 30 days and can be revoked by the offeror before that time expires, the offeror has complete control over the timing of the offer from a procedural standpoint. The offeror's ability to revoke the offer before it is accepted also undermines any detrimental reliance claims.

Further, permitting the offeree to accept the section 998 offer after receipt of notice of an adverse *tentative* ruling does not distort the policy behind this provision. A tentative ruling is just that, tentative. Consequently, settlement at this stage should still be encouraged. Thus, contrary to the trial court's conclusion, in a situation such as the one presented here, the policy behind section 998 is advanced by enforcing the statutory settlement offer.

### DISPOSITION

The order denying appellant's motion to enforce respondent's section 998 offer to compromise is reversed. The trial court is directed to vacate the

judgment granting summary judgment and to enter a new judgment for appellant in the amount of $60,000. The parties shall bear their own costs on appeal.

Stone (W.A.), Acting P. J., and Vartabedian, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 28, 1999.