Filed 4/25/23  McKenzie v. Alta Resources CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ADAMINA MCKENZIE, | |
| Plaintiff and Appellant, | G061292 |
| v. | (Super. Ct. No. 30-2020-01159878) |
| ALTA RESOURCES CORPORATION et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Martha K. Gooding, Judge.  Appeal dismissed.

Adamina McKenzie, in pro. per., for Plaintiff and Appellant.

The Hanover Law Office, Amy K. Jensen and Jim Douglas Newman for Defendants and Respondents.

\*          \*          \*

Plaintiff Adamina McKenzie is a former employee of defendants Alta Resources Corporation (Alta), and Diana Floyd was her supervisor (collectively defendants). After McKenzie's employment was terminated, she filed the instant lawsuit, claiming that her coworkers and superiors were not who they claimed to be, but were various actors and other individuals pretending to be her coworkers and superiors. The trial court sustained defendants' demurrer to the second amended complaint. We conclude the notice of appeal was untimely and dismiss the appeal.

# I
# FACTS[1]

We state the facts according to the allegations of the second amended complaint,[2] as is appropriate in an appeal from a judgment following the court's decision to sustain a demurrer without leave to amend.

McKenzie was hired as a human resources generalist at Alta's location in Brea, California, in 2019.[3] She reported directly to Floyd. In January 2020, she visited Alta's corporate office in Wisconsin to meet several Alta personnel, including Floyd, her

---

[1] Due to the inadequacy of the record, on our own motion, we augmented the record with five additional documents, including three minute orders, a motion to dismiss, and a demurrer to the second amended complaint.

[2] Defendants demurred to both the original and first amended complaints. Both demurrers were sustained for failure to state a cause of action with leave to amend. We focus on the second amended complaint, which is the operative complaint.

[3] Counsel for defendants is reminded that in an appellate brief, proper citations are not to paragraphs in a named document, such as a complaint, but to pages in the record on appeal. (Cal. Rules of Court, rule 8.204 (a)(1)(C), hereafter, references to rules are to the Cal. Rules of Court.) Both parties and counsel are also reminded that all factual assertions, including the procedural history of the case, must include citations to the record. If the record the appellant provides is insufficient, the responding party should either move to augment or move to dismiss for failure to provide an adequate record. It is not acceptable for any party to cite to facts without reference to the record.

2

peers, and executives. She "trusted and relied upon the information given to her by the executive team within ALTA, believing they were who they claimed themselves to be" and "relied upon that information . . . to become further immersed within Alta's culture and customs." The second amended complaint alleged that "[t]he backgrounds and work experience that was shared with [her] during her conversation were false, as it was discovered that the individuals herein are utilizing pseudonym names while fabricating their background and credentials."

Several incidents followed, which we need not detail here, that McKenzie alleged were cause for concern about Alta's human resources practices and "increased her suspicion" about Alta and its personnel. The second amended complaint alleged that these and other incidents led her to discuss "her suspicions with an expert in forensics" who agreed to investigate Alta's management. This "expert in 'Auricular Anthropometry'"[4] turned out to be McKenzie's husband.

His alleged investigation, which finished around July 8, concluded that McKenzie's coworkers, superiors, and other individuals who worked at Alta were not who they claimed to be. The second amended complaint stated that Floyd, for example, was both the actress Jodie Foster and a performer in pornographic works named "Kali Kala Lina." One of McKenzie's coworkers was allegedly actress Kelly McGillis. The CEO of the company was allegedly the deceased Hollywood director named Gordon Hunt. One of Alta's vice-presidents was allegedly Charles Foster, Jodie Foster's son. One of the program directors was purportedly journalist Anderson Cooper, and the former director of information security was allegedly the cofounder of Microsoft, Bill Gates.

---

[4] McKenzie's second amended complaint alleged that "'Auricular Anthropometry'" is the use of biometrics of the human ear to identify individuals. She alleged that the individual who is identified in her appellate brief as McKenzie's husband was an "expert" in this area, but did not identify any credentials that would qualify him as such.

McKenzie alleged that she had "met and worked directly with" these individuals, and that as a result of the alleged discovery that these people were not who they claimed to be, she "suffered from severe anxiety and nightmares from their misrepresentations and fraudulent acts." Her doctor allegedly "placed her off work" and she filed a workers' compensation claim on approximately July 14. On or around July 23, Floyd laid McKenzie off, which Floyd stated was the result of the COVID-19 pandemic.

The second amended complaint further alleged that three years earlier, she and her husband had been diagnosed with posttraumatic stress disorder (PTSD) as a direct result of a "'Hollywood Actor'" at a previous employer intentionally defrauding herself and her immediate family. McKenzie alleged that as a result of the events at Alta, she and her family have experienced "extreme emotional distress" which aggravated her PTSD. As McKenzie "gained more knowledge and insight regarding the true nature of Hollywood Talent Agencies and the Media, the distress prevented her from leaving her home to engage in any social activities." The alleged "deceit has caused serious concern" for McKenzie,[5] including "severe/intractable emotional distress, mistrust, apathy, and isolation."

The second amended complaint alleged three causes of action, for "fraud intentional misrepresentation," "concealment fraud," and "negligent infliction of emotional distress," all of which arose from the alleged events set forth above. Defendants filed a demurrer. On September 20, 2021, the court sustained defendants' demurrer without further leave to amend. The judgment was entered on November 19, and the clerk gave notice of the judgment by electronic and mail service on the same date. McKenzie filed her notice of appeal on April 12, 2022.

---

[5] The complaint alleged that McKenzie's family had suffered similar harm, but as they are not plaintiffs, we disregard these allegations.

4

## II

## DISCUSSION

*Standard of Review*

"In our de novo review of an order sustaining a demurrer, we assume the truth of all facts properly pleaded in the complaint or reasonably inferred from the pleading, but not mere contentions, deductions, or conclusions of law. [Citation.] We then determine if those facts are sufficient, as a matter of law, to state a cause of action under any legal theory." (*Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1052.) "In order to prevail on appeal from an order sustaining a demurrer, the appellant must affirmatively demonstrate error. Specifically, the appellant must show that the facts pleaded are sufficient to establish every element of a cause of action and overcome all legal grounds on which the trial court sustained the demurrer. [Citation.] We will affirm the ruling if there is any ground on which the demurrer could have been properly sustained." (*Ibid.*)

*Self-Represented Litigants*

Self-represented litigants are required to follow the rules of procedure. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.) "[M]ere self-representation is not a ground for exceptionally lenient treatment. Except when a particular rule provides otherwise, the rules of civil procedure must apply equally to parties represented by counsel and those who forgo attorney representation. . . . A doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.)

*Timeliness of the Appeal*

Strict rules govern the timeliness of an appeal. "[T]he filing of a timely notice of appeal is a jurisdictional prerequisite." (*Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 113.) "'Unless the notice is actually or constructively filed within the appropriate filing period, an appellate court is without jurisdiction to determine the merits of the appeal and must dismiss the appeal.' [Citations.] The purpose of this requirement is to promote the finality of judgments by forcing the losing party to take an appeal expeditiously or not at all." (*Ibid.*)

The California Rules of Court govern the filing period for a notice of appeal. Rule 8.104(a)(1), provides the general rule for filing a timely notice of appeal: "a notice of appeal must be filed on or before the earliest of: [¶] [(1)] 60 days after the superior court clerk serves the party filing the notice of appeal with a document entitled 'Notice of Entry' of judgment or a file-endorsed copy of the judgment, showing the date either was served; [¶] [(2)] 60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment or a file-endorsed copy of the judgment, accompanied by a proof of service; or [¶] [(3)] 180 days after entry of judgment." These time limits are not extended when service is by mail. (Code Civ. Proc., § 1013, subd. (a);[6] *Poster v. Southern Cal. Rapid Transit Dist.* (1990) 52 Cal.3d 266, 274.)

In this matter, the judgment of dismissal was entered by the trial court on November 19, 2021. A file-stamped copy was served electronically and by mail on all parties by the clerk on the same day. The deputy clerk who signed the clerk's certificate of mailing was Delia Nunez. McKenzie argues that service was defective because the judgment "does not contain a valid signature and is void of a printed name – merely reflecting illegible scribble." She cites to section 1013, subdivision (a)(4), in support of

---

[6] Subsequent statutory references are to the Code of Civil Procedure.

6

this proposition, but no subparagraph (4) exists in that statute. Further, that subdivision says nothing about the legibility of any signature.

In any event, we disagree with McKenzie's premise. The signature on the clerk's certificate of mailing was clearly "Delia Nunez" and is legible. She points out that the file stamp on the enclosed judgment was not signed by a deputy clerk, but cites no authority that it must be signed in order to be valid. The judgment was signed and dated by the judge and file stamped. The judgment also appears on the register of actions.

The certificate of mailing also stated that the document enclosed was a "Judgment," which was correct, not a "proposed judgment" as McKenzie claims. It included the date and time of electronic service, and the clerk's name was clear and legible. We find no defects in the clerk's certificate of service and conclude the clerk properly served "a file-endorsed copy of the judgment, showing the date [it] was served" pursuant to rule 8.104(a)(1)(A). The deadline to file a notice of appeal was 60 days later, January 21, 2022. McKenzie did not file her notice of appeal until April 12, 2022. Her appeal is therefore untimely and must be dismissed.

*McKenzie's Substantive Arguments Lack Merit*

Even if the appeal was timely and we were to reach the merits, the judgment would be affirmed. McKenzie offers three arguments – none of which address whether the complaint adequately stated *any* cause of action.

First, McKenzie argues that defendants did not file a timely response to the second amended complaint. McKenzie filed the second amended complaint on April 19, 2021. The record also includes a proof of service without a file stamp stating the second amended complaint and summons were served on the same date. The file-stamped copy is dated May 6. Contrary to McKenzie's claims, defendants do not deny they received

7

the second amended complaint, but there is a difference between being served with or receiving a complaint and that complaint being properly filed with the court.

McKenzie provides a "timeline" in support of the timeliness argument that lacks references to the record for key assertions, including her assertion that she was present at a case management conference on May 3, 2021. The minute order from that hearing explicitly states that McKenzie was not present, and the court set an order to show cause why she should not be sanctioned $250 for her failure to attend. According to defendants' counsel's sworn declaration, at that hearing, defendants were informed the second amended complaint had never been properly filed, and as a result, they filed a motion to dismiss the entire action (based on the sustained demurrer to the first amended complaint) rather than a response to the second amended complaint. Upon learning the second amended complaint had been filed, defendants filed an ex parte application to extend their time to file a response, which the court granted. Defendants filed their demurrer to the second amended complaint pursuant to the court's order.

The court was within its discretion to extend defendants' time to respond pursuant to section 1054, and McKenzie does not argue that discretion was abused. Her assertions that defendants' counsel acted inappropriately or made false statements to the court are without merit.

McKenzie's next argument is that the judge in this case is "impersonating" a judge. She claims the judge is the deceased sister of actor Ian McKellen. This assertion is entirely without evidence, is not properly before this court, and does not warrant further discussion.

Her final argument is equally unavailing – McKenzie claims that defense counsel are not who they purport to be, but are actually actresses Elle Fanning and Dakota Fanning (who she also claims is a performer in pornographic works). McKenzie "demands" that both attorneys must be removed from representing defendants. Not only

8

is this argument without factual basis, it is also an improper argument for the first time on appeal.

McKenzie does not contest the substance of the court's ruling, which was that each of her purported claims failed to state a cause of action. She had three opportunities to file an adequate complaint. We agree with the trial court that she failed to state any cause of action, and find no evidence that further leave to amend would result in a different outcome.

## III

## DISPOSITION

The appeal is dismissed. Defendants are entitled to their costs on appeal.

MOORE, J.

WE CONCUR:

O'LEARY, P. J.

DELANEY, J.