Filed 4/13/22  Mike Murphy's Enterprises v. Fineline Industries CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MIKE MURPHY'S ENTERPRISES, INC., Plaintiff and Appellant, v. FINELINE INDUSTRIES, INC. et al., Defendants and Respondents. | F080503 (Super. Ct. No. 16CV01617) **OPINION** |

APPEAL from a judgment and orders of the Superior Court of Merced County. Brian L. McCabe, Judge.

Law Offices of Nicholas D. Heimlich, Nicholas D. Heimlich; Heimlich Law and Alan Heimlich for Plaintiff and Appellant.

Quall Cardot, Matthew W. Quall, John M. Cardot and Matthew R. Dardenne for Defendants and Respondents.

-ooOoo-

This is the second of two appeals in the ongoing patent and licensing dispute between appellant Mike Murphy's Enterprises, Inc. (Murphy) and respondents Fineline Industries, Inc. and Fineline Industries, LLC[1] (collectively Fineline). In this appeal, Murphy raises a host of issues this court has resolved in the first appeal, as well as several new issues relating to the trial court's determination that Fineline, not Murphy, was the prevailing party in the litigation below and its subsequent award of fees and costs to Fineline. As discussed below, this court will not re-review Murphy's substantive arguments regarding the trial court's judgment. With respect to the prevailing party finding and related rulings, this court finds that the trial court incorrectly determined Murphy was not the prevailing party under Code of Civil Procedure section 1032,[2] but that it correctly determined Fineline should be treated as both the prevailing party under section 998 and the party prevailing on the contract under Civil Code section 1717. With respect to the fees and costs awarded, this court finds the trial court made some errors in awarding costs, but generally affirms the majority of the fees and costs awarded. Accordingly, for the reasons set forth below, this court reverses the trial court's determination Fineline was the prevailing party under section 1032 and strikes various costs awarded to Fineline. The matter shall be remanded to permit the trial court to modify the costs awarded.

**FACTUAL AND PROCEDURAL BACKGROUND**

The basic background of the present dispute, along with the trial court's rulings through the original judgment are recited in our discussion of Murphy's appeal in

---

[1]    Respondents Fineline Industries, Inc. and Fineline Industries, LLC, are/were California entities with their headquarters in Merced, California. The California Fineline business entities were converted into Fineline Industries, LLC (Fla.) in or about June 2015. Correct Craft, Inc. (a corp. formed in Fla.) then acquired a majority and/or controlling interest in the stock of the Fineline entities. Since the events at issue here occurred, Fineline Industries, Inc. and Fineline Industries, LLC have wrapped up their California activities and dissolved.

[2]    Undesignated statutory references are to the Code of Civil Procedure.

case No. F080048 (the first appeal). This court incorporates the factual and procedural background discussion from the first appeal as if fully set forth here. As noted in the first appeal, the trial court ultimately entered judgment in favor of Murphy on its breach of contract claim, awarding $62,936.01, but not before rejecting the majority of Murphy's breach of contract theories and its other related causes of action. In resolving the first appeal, this court generally affirmed the trial court's judgment and rulings, save for its calculation of prejudgment interest. In this appeal, Murphy raises several disputes with respect to postjudgment motions filed by both parties related to cost and fee awards.

Following judgment, both parties filed motions to be deemed the prevailing party in the litigation and to tax the costs requested by the other party. Murphy argued it had prevailed based on the judgment entered and requested its costs. Fineline sought prevailing party status based on the $85,000 offer to compromise it had mailed to Murphy on July 18, 2016, near the start of the litigation, and the language of a 10-year license agreement between the parties (the contract), which provided that the prevailing party would be entitled to costs, including reasonable attorney fees. Both parties also filed motions to tax the costs requested by the other. To the extent additional facts or positions are relevant to the issues on appeal, they are discussed in the context of the arguments.

Ultimately, in a series of orders, the trial court granted Fineline's motions (1) to be deemed the prevailing party in the litigation and for attorney fees and costs, (2) to be deemed the prevailing party pursuant to section 998, and (3) to strike Murphy's request for costs. The court also denied Murphy's request to tax costs and entered an amended judgment. In the same series of orders, the trial court also formally denied Murphy's motions for a new trial and to vacate the original judgment, issues dealt with in the first appeal.

With respect to Fineline's request to be declared the prevailing party and for attorney fees and costs, the trial court's order stated: "[Fineline's] motion to be deemed

3.

prevailing party pursuant to Code of Civil Procedure sections 1021 and 1032 and Civil Code section 1717 is GRANTED.  Upon review of the parties' supplemental briefing, the Court concludes [Fineline is] the 'prevailing party' under the 'mixed results' theory as set forth in *Scott Co. ... v. Blount*[,] *Inc. (1999) 20 Cal.4th 1103*."  (Italics in original.)  The court then awarded Fineline attorney fees of $522,508.50, costs of $13,374.96, and expert witness fees of $28,337.50, for a total award to Fineline of $564,220.96.

On Fineline's request for prevailing party status under section 998, the trial court concluded, "[Fineline was] the 'prevailing party' because, even with the addition of [Murphy]'s allowable pre-offer costs (as supported by the supplemental briefing), [Murphy] did not 'beat' [Fineline's] Section 998 offer.  And in striking Murphy's costs request, the court affirmed that Fineline had "been deemed the prevailing party herein."

The trial court rejected Murphy's motions to tax costs sought by Fineline, denying the motions "in their entirety, as [Fineline has] been deemed the prevailing party herein and [Murphy] fails to support its motions with any cogent, applicable argument or analysis."  Finally, in entering the amended judgment, the trial court affirmed the damages award to Murphy of $62,936.01, but then reduced that figure by the attorney fees ($522,508.50), costs ($13,374.96), and expert witness fees ($28,337.50) awarded to Fineline.  The net monetary judgment entered, then, was in Fineline's favor and totaled $501,284.95.

This appeal followed.

## DISCUSSION

The statutory award of costs in a litigation is generally a straightforward application of statutory law.  However, when attorney fees issues become intertwined through contractual agreements, the analysis required is no longer straightforward.  Indeed, "[a] party's entitlement to attorney fees in a lawsuit based on a contract containing an attorney fees provision often depends not just upon the language of the contractual provision but also upon the complex interaction of several statutes that affect

4.

a party's contractual right to attorney fees." (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1106 (*Scott*).)

The complexity hinted at by *Scott* was present in this case, where section 1032 set the starting point, Fineline raised a dispute under section 998, and that dispute then required consideration of the contract and Civil Code section 1717. In resolving this chain of issues, the trial court was required to make a prevailing party finding under section 1032 and a party prevailing on a contract finding under Civil Code section 1717—linguistically similar findings that actually involve different standards. It then needed to consider how those findings would affect cost and fee awards across the litigation, particularly given the section 998 offer Murphy rejected, while at the same time resolving several disputes regarding the appropriateness of requested fees and costs. As noted above, the court found Fineline was the prevailing party for all purposes and awarded Fineline its full costs and fees arising after its section 998 offer. Murphy has appealed these decisions.

Given the issues underlying the trial court's rulings, Murphy's briefing in this matter, even more so than its briefing in the first appeal, falls short of what is expected of an appellate attorney practicing before this court. Murphy includes many arguments without meaningful citation and presents his arguments in an unnecessarily complex logical structure. This court has endeavored to identify and resolve Murphy's positions as stated, but notes that it would be within its discretion to conclude many issues raised by Murphy have been forfeited.

As the court understands Murphy's briefing, it appears Murphy takes issue with the trial court's determination that Fineline should be deemed the prevailing party in the litigation and the prevailing party with respect to the contract's attorney fees provision. On the first issue, Murphy argues the trial court erred in interpreting section 1032, including how the court viewed and weighed Fineline's section 998 offer. On the second, Murphy alleges that it was the party prevailing on the contract under Civil Code

section 1717 and thus was entitled to reasonable attorney fees. Murphy contends the trial court's rulings to the contrary were incorrect. Finally, in 16 sparsely cited numbered points,[3] Murphy specifically attacks many of the fees and costs awarded to Fineline.

In response, Fineline argues the trial court correctly found it to be the prevailing party under both Code of Civil Procedure section 1032 and Civil Code section 1717, utilizing a " 'mixed results' " theory it contends derives from *Scott*. Fineline further argues the court properly exercised its discretion in finding Fineline the prevailing party under section 998. And Fineline defends each of the challenged costs. Finally, Fineline argues the trial court correctly refused to award Murphy any preoffer costs because Fineline was properly deemed the prevailing party in the litigation.

To properly resolve the disputes raised, this court views the relevant procedure as follows. First, the trial court is required to determine the prevailing party under section 1032. If Murphy qualifies as a prevailing party under the statute, the trial court then turns to any arguments made under section 998. In this portion of the analysis, the trial court needs to determine whether Murphy's net monetary recovery exceeds any qualifying but rejected settlement offer. The determination of Murphy's net monetary recovery is calculated by taking the amount awarded and adding preoffer interest and any properly requested costs. Such costs may include preoffer attorney fees if such fees are allowed by statute or contract. As here, when authorized by contract, the authority to award such fees is also governed by Civil Code section 1717.

Thus, the trial court must, in conjunction with its section 998 analysis, also determine the party prevailing on the contract under Civil Code section 1717. If the plaintiff is the party prevailing under Civil Code section 1717, then reasonable preoffer attorney fees may be included in the net recovery. (See *Scott*, *supra*, 20 Cal.4th at

---

[3] Murphy's numbering system places the 16 specific arguments in points labelled "3" through "19." For clarity in reference to the briefing, we refer to the arguments by the point numbers Murphy assigned.

p. 1108 ["In analyzing the correctness of this award, we shall proceed step by step, first examining Code of Civil Procedure section 1032 .… Next, we consider the attorney fees provision of the contract, then the effect of [Civil Code ]section 1717 on the attorney fees provision, and finally the effect of Code of Civil Procedure section 998 .…"].) If the net monetary recovery is greater than the rejected settlement offer, the plaintiff will be considered the prevailing party under section 1032 for the whole case. If the net monetary recovery is lower, the defendant will be treated as the prevailing party at all times after the settlement offer was made. (*Scott*, at pp. 1109–1110 [noting preoffer costs not precluded to prevailing party by section 998 offer].)

With that guidance in mind, we turn to the arguments made in this appeal.

## *Standards of Review*

" 'Generally, the trial court's determination of the prevailing party for purposes of awarding attorney fees is an exercise of discretion, which should not be disturbed on appeal absent a clear showing of abuse of discretion. [Citation.] But the determination of the legal basis for an attorney fee award is subject to independent review. [Citation.] In such a case, the issue involves the application of the law to undisputed facts.' " (*Wohlgemuth v. Caterpillar Inc.* (2012) 207 Cal.App.4th 1252, 1258, citing *Kim v. Euromotors West/The Auto Gallery* (2007) 149 Cal.App.4th 170, 176.)

We review a trial court's decision to tax or strike costs for an abuse of discretion. However, "because the right to costs is governed strictly by statute [citation] a court has no discretion to award costs not statutorily authorized." (*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 774.) To the extent the court's authority turns upon interpreting the authorizing statutes, such interpretation is a question of law reviewed de novo. (See *Vidrio v. Hernandez* (2009) 172 Cal.App.4th 1443, 1452.)

Ultimately, "it is a fundamental principle of appellate procedure that a trial court [order or] judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial

court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) Stated another way, all presumptions are indulged to support the trial court order or judgment "on matters as to which the record is silent, and error must be affirmatively shown." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*).)

## *Prevailing Party Under Section 1032*

In this case, the trial court granted Fineline's motion to be declared a prevailing party under section 1032. Its purported basis was a conclusion that Fineline is "the 'prevailing party' under the 'mixed results' theory as set forth in *Scott* ...." Murphy contends it should typically be considered the prevailing party in this litigation under section 1032 because it obtained a net positive monetary award on its claims. We agree.

"As rewritten, section 1032 now declares that costs are available as 'a matter of right' when the prevailing party is within one of the four categories designated by statute. (§ 1032, subds. (a)(4), (b).) The allowance of costs as a matter of right no longer depends on the character of the action involved but on how the prevailing party is determined. [Citations.] The statute defines the prevailing party to include four categories of parties: the party with a net monetary recovery, the defendant in whose favor a dismissal was entered, the defendant where neither plaintiff nor defendant recovers any relief, and the defendant against whom plaintiff has not recovered any relief. (§ 1032, subd. (a)(4).) In other situations or when a party recovers other than *monetary* relief, the prevailing party is determined by the court, and the award of costs is within the court's discretion." (*Michell v. Olick* (1996) 49 Cal.App.4th 1194, 1197–1198.)

On the face of the statute, then, Murphy is correct that it qualifies as the prevailing party. Although Fineline prevailed on multiple claims and breach of contract theories, while substantially limiting the damages sought against it, the court ultimately found Fineline in breach of contract and awarded damages plus interest of approximately $62,000. Thus, although only a partial recovery, Murphy obtained a net monetary

8.

recovery. "Because a plaintiff with partial recovery was found under prior case law to be the successful party entitled to costs, and because the revision of section 1032 was apparently designed to codify existing case law, we construe the 'party with a net monetary recovery' to include a plaintiff who obtains a partial recovery, even though the defendant had not sought damages in a cross-complaint." (*Michell v. Olick*, *supra*, 49 Cal.App.4th at p. 1199, fns. omitted.)

Fineline defends the court's ruling, arguing that it was properly considered the prevailing party for the whole litigation based on *Scott*. While *Scott* is an essential case further along the analysis, it plays no role here. In *Scott*, our Supreme Court was faced with a situation similar to ours, where the plaintiff obtained a partial recovery but was unable to overcome the section 998 settlement offer previously made. (*Scott*, *supra*, 20 Cal.4th at p. 1106.) Although the trial court discussed what Fineline and the court call the "mixed result" theory, it did so exclusively in the context of determining the party prevailing on a contract under Civil Code section 1717. (See *Scott*, at p. 1109.) Indeed, in *Scott*, even though the defendant obtained the benefits of section 998, and its attendant award of postoffer costs and fees, the plaintiff's status as the prevailing party under section 1032 and, in part, Civil Code section 1717, meant that the plaintiff remained entitled to its preoffer costs, including attorney fees. (*Scott*, at p. 1112 ["A plaintiff who rejects a settlement offer that is greater than the recovery it ultimately obtains may nonetheless recover its preoffer costs to which it would otherwise be entitled, including preoffer attorney fees in cases like this one where attorney fees are an authorized category of recoverable costs under sections 1032 and 1033.5."].)[4]

---

[4]    We specifically note however, that in *Scott*, the plaintiff was also deemed to be the party prevailing on a contract under Civil Code section 1717, given the specific language of the parties' underlying contract. (*Scott*, *supra*, 20 Cal.4th at p. 1109.) There is no similar finding by the trial court in this case.

9.

Accordingly, the trial court abused its discretion when it concluded Fineline, which satisfied none of the four statutory grounds, was the prevailing party under section 1032.  Rather, the trial court's own judgment confirmed that Murphy is the statutory prevailing party under section 1032.  As the trial court's final ruling requires consideration of more than the prevailing party finding under section 1032, however, we continue to the nested section 998 and Civil Code section 1717 issues.

## Section 998 Analysis

In addition to finding Fineline the prevailing party under section 1032, the trial court also found that Fineline was the prevailing party under section 998 and Civil Code section 1717.  As noted above, the Civil Code section 1717 finding is a nested analysis within the broader section 998 ruling.

Murphy acknowledges that it received and rejected a qualifying settlement offer of $85,000 under section 998, but contends it ultimately received a higher award when including required fee and cost factors to the $62,936.01 award it obtained.  To support this claim, Murphy argues the trial court (1) wrongly determined the date the offer was made, (2) incorrectly calculated the interest it deducted from Murphy's award, and (3) failed to properly include $44,042.86 in relevant costs and fees in the calculation.  To the extent this argument falls short, Murphy argues it should still be considered the prevailing party under a "mixed results" theory.  We take each in turn.

### Relevant Date for Settlement Offer

Murphy's first argument focuses on the date it contends the trial court determined Fineline made its qualifying settlement offer under section 998.  According to Murphy, the trial court determined the offer was made the day that Fineline mailed the offer, July 18, 2016.  Murphy, citing to *Poster v. Southern Cal. Rapid Transit Dist.* (1990) 52 Cal.3d 266 (*Poster*) and section 1013, argues the correct date was when it received the offer, or July 23, 2016.  We do not agree.

10.

First, nowhere in the trial court's order granting Fineline's section 998 motion does it state which day it used to determine the date of Fineline's offer. Thus, it is unclear whether Murphy's argument is based in an actual error, even if correct. This problem is confirmed by the fact that Murphy's argument does not explain how the date would affect the trial court's ultimate determination. Upon review of the prior briefing, the full amount at issue over the date discrepancy is slightly less than $3,000, with roughly half of this attributable to attorney fees incurred. Murphy's arguments in this case fail to demonstrate that the trial court erred or how that error would require reversal, and thus cannot support reversal. (*Denham*, *supra*, 2 Cal.3d at p. 564.) Regardless, even if we presume the trial court used the July 18, 2016 date, it would have been acting properly.

"Under Code of Civil Procedure section 1013, which governs the rules of service, service by mail is effected upon deposit of the notice 'or other paper' in a post office, mailbox, or similar facility maintained by the United States Postal Service, in a sealed postage-paid envelope, addressed to the person to be served at his last stated business address. (Code Civ. Proc., § 1013, subd. (a).) The service is complete at the time of deposit, but any statutory period within which the recipient is required to act on the contents of the missive is extended by five calendar days. (*Ibid.*)" (*Berg v. Darden* (2004) 120 Cal.App.4th 721, 733.) Under this statutory scheme, as noted in *Berg* with respect to the running of prejudgment interest under Civil Code section 3291, the date of mailing constitutes the date the offer was made. (*Berg*, at p. 733.)

*Poster* is not to the contrary. In *Poster*, our Supreme court considered not when a section 998 offer was made, but when a response would be deemed late if the offer had been served by mail. Relying on section 1013, the court found that the five-day-response extension to documents serviced by mail properly applies to section 998 offers as well. (*Poster*, *supra*, 52 Cal.3d at p. 274 ["Section 1013 applies to the service by mail of a 'notice or other paper' which would certainly include a section 998 settlement offer. And

11.

by specifically extending for five days 'any prescribed period ... to do any act or make any response' to any paper served by mail, section 1013 appears clearly to apply to the time period for accepting a statutory settlement offer."].) In a related footnote, the court confirmed that the offer was actually made when mailed, writing: "Under section 998, the 30-day period runs from the time the offer is 'made.' Because an offeror 'makes' the offer by serving it in writing, when a section 998 offer is served by mail it is clear that the statutory period for response runs from the service by mail." (*Id*. at p. 274, fn. 4.)

Thus, the trial court would have been correct to conclude the section 998 offer was made when mailed and not when received. It would have thus acted properly if it calculated pre-and postoffer costs around July 18, 2016. (See § 998, subd. (c)(1) ["If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer."].)

*Relevant Interest Calculation*

Similar to its claims that the trial court utilized the wrong day to determine when the section 998 offer was made, Murphy implies the trial court wrongly calculated the proper amount of prejudgment interest to include in its section 998 calculation without pointing to any place in the record where the trial court did, in fact, calculate the interest as Murphy contends or explaining how such an erroneous calculation would affect the trial court's ultimate ruling. Such an argument fails to demonstrate error. (*Denham*, *supra*, 2 Cal.3d at p. 564.)

As the trial court's orders on this issue contain no specific calculations, it is unclear if it adopted Fineline's interest calculation. Nor is it clear how such calculations would be incorrect. A review of the underlying briefing shows that Fineline utilized the amount of prejudgment interest its expert had calculated through June 3, 2015, then added to that a daily rate based on a 10 percent annual interest on the damages awarded. It thus argued that the total interest through the section 998 offer was $6,344.75. As best

12.

this court can understand them, Murphy's arguments to the contrary appear to contend that interest began accruing in full upon the damages awarded when the first breach of contract occurred; a point that would not logically follow from the nature of the breach. Murphy then extrapolates that the court only awarded three year's interest and thus should have included two-thirds of its final interest award in the preoffer cost category. However, even under this theory, the difference in positions amounts again to only around $3,000, with no explanation from Murphy how such a difference is meaningful.

*Murphy's Claim To $44,042.86 In Costs*

The crux of Murphy's claim that it was the prevailing party, even given the section 998 offer, is its assertion that it overcame Fineline's $85,000 settlement offer when the judgment is added to the $44,042.86 in costs Murphy claims as of July 23, 2016. To reach this $44,042.86 figure, Murphy concedes that it must include attorney fees authorized by the contract and Civil Code section 1717. Murphy's briefing does not indicate how much of the $44,042.86 requested is covered by these attorney fee requests. A review of the underlying briefing and documentation submitted to the trial court shows, however, that the vast majority of the $44,000—likely more than $40,000—arises from attorney fees.[5] Thus, to prevail on its claim the trial court erred in determining Murphy did not overcome Fineline's section 998 offer, Murphy must show the trial court erred in failing to award it these fees.

<u>The Trial Court Correctly Excluded Preoffer Fees</u>

Murphy's claim to preoffer attorney fees as relevant costs turns on whether Murphy could claim those costs under the contract and Civil Code section 1717. Such costs are authorized by section 1033.5, subdivision (10)(A), which specifically allows for attorney fees when authorized by a contract. Here, the contract awards fees as follows:

---

[5]    The invoices Murphy submitted to support its preoffer figures show roughly $1,075 in items marked "Expense," while its memorandum of costs summary, excluding attorney fees, only totals $38,093.16.

"**Attorney Fees**:  The prevailing party in any dispute arising under this Agreement will be entitled to all costs of suit, including reasonable attorney fees."  This provision is also statutorily controlled by Civil Code section 1717.  (*Scott*, *supra*, 20 Cal.4th at p. 1106 ["Section 1717 of the Civil Code, however, which governs enforcement of contractual attorney fees provisions, provides that any contractual attorney fees provision must be applied *mutually* and equally to all parties to the contract, even if it is written otherwise."].)

Civil Code section 1717, subdivision (a) provides in part:  "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract ... shall be entitled to reasonable attorney's fees in addition to other costs."  Civil Code section 1717, subdivision (b)(1) defines the party prevailing on the contract "as 'the party who recovered a greater relief in the action on the contract.'  This definition is mandatory and cannot be avoided or altered by contract; contractual provisions conflicting with it are void."  (*Wong v. Thrifty Corp.* (2002) 97 Cal.App.4th 261, 264.)

"When a party obtains a simple, unqualified victory by completely prevailing on or defeating all contract claims in the action and the contract contains a provision for attorney fees, [Civil Code ]section 1717 entitles the successful party to recover reasonable attorney fees incurred in prosecution or defense of those claims.  [Citation.]  If neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees.  '[I]n deciding whether there is a "party prevailing on the contract," the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs,

14.

opening statements, and similar sources.' " (*Scott*, *supra*, 20 Cal.4th at p. 1109, first & second bracketed insertions added.)

As Murphy only prevailed on one breach of contract claim and failed to prevail under any other theories or claims, its potential entitlement to preoffer fees turns on whether it was the party prevailing on the contract under Civil Code section 1717, a status the trial court concluded it was not entitled to under the mixed-results theory outlined in *Scott*; in other words, under the comparison arising if neither party obtains a complete victory. This determination is reviewed for abuse of discretion. (*Scott*, *supra*, 20 Cal.4th at p. 1109 [trial court did not abuse discretion in finding plaintiff prevailing party although plaintiff did not achieve all of its litigation objectives].)

Murphy argues the trial court's determination was incorrect for two reasons. First, Murphy argues it "received a net monetary recovery under [Civil Code section ]1717"[6] and was thus a party that obtained a complete victory on the contract. Second, Murphy argues that it prevailed on the primary claim in the litigation and upon all of Fineline's affirmative defenses, and thus should be deemed the party prevailing on the contract even under *Scott*'s balancing test. Neither argument convinces this court that the trial court abused its discretion.

On the first argument, Murphy's mere victory on one theory presented to support its breach of contract claim, and the resulting award of damages, is not enough to demonstrate the trial court erred in determining Murphy did not obtain a complete victory on the contract. Indeed, the factual scenario here seems indistinguishable from that

---

**6** Murphy provides no citation for the statement quoted here. As shown above, the language Murphy attributes to Civil Code section 1717's party prevailing on a contract determination actually comes from Code of Civil Procedure section 1032's prevailing party analysis. While the two terms are similar, and often used interchangeably in opinions, the analyses are different. This court has found no case stating, and Murphy makes no argument in its briefs, that Code of Civil Procedure section 1032's statutory standards for determining prevailing party should control the analysis under Civil Code section 1717.

outlined in *Scott*, where the trial court was affirmed after applying the comparative test. (*Scott*, *supra*, 20 Cal.4th at pp. 1109, 1116.)

In *Scott*, while the "plaintiff sought to prove more than $2 million in damages; it succeeded in establishing only about $440,000 in damages." (*Scott*, *supra*, 20 Cal.4th at p. 1109.) Based on this discrepancy, our Supreme Court affirmed that the plaintiff "did not achieve all of its litigation objectives, and thus is not automatically a party prevailing on [a] contract for purposes of [Civil Code ]section 1717." (*Ibid.*) Here, Murphy attempted to recover more than $500,000[7] in damages under multiple breach of contract theories, but its recovery was limited to roughly $49,000 plus interest based on facts that were generally conceded by Fineline. As in *Scott*, this result demonstrates Murphy did not obtain its full litigation objectives and the court cannot be said to have erred in failing to find Murphy had a complete victory on the contract.

On the second argument, we see no abuse of discretion in the trial court's determination that Murphy was not the prevailing party under a mixed-results theory. Murphy's claim that it prevailed on all of Fineline's affirmative defenses is unsupported by any citation to the record or any meaningful argument. This failure is particularly glaring as Fineline responds that many of those affirmative defenses were applicable to the other claims raised by Murphy that Fineline prevailed upon and that the trial court never made any specific findings on those defenses. Regardless, the record contains

---

[7]     Murphy's argument that this number is incorrect is unavailing. As Murphy admits, its expert submitted this number under a theory that all boats made by Fineline were royalty bearing. Notably the figure also included aggressive litigation theories concerning late charges and interest calculations. These positions failed because the trial court accepted Fineline's arguments that jurisdictional restrictions precluded the all-boat theory and likewise rejected Murphy's late charge and interest theories. There is no reason to conclude that Murphy's failures at trial mean it never included its own theories within its litigation goals. Even so, Murphy asserts its request was actually for $179,622.44, a figure still roughly three times higher than the award entered, further confirming Murphy did not obtain a complete victory. Finally, in a separate argument, Murphy offers the figure in its complaint, $53,000, as its actual ligation goal. But as *Scott* confirms, the litigation goal is not limited to the complaint, but to the actual arguments made in the litigation. (*Scott*, *supra*, 20 Cal.4th at p. 1109.)

16.

more than adequate evidence in the litigation results sought by Murphy, and the actual results obtained, for this court to conclude there was no abuse of discretion in determining that Fineline, and not Murphy, was the party prevailing under the contract with respect to Civil Code section 1717.

Ultimately, as the trial court did not abuse its discretion in finding Fineline was the party prevailing on the contract under Civil Code section 1717, Murphy has not demonstrated that the trial court erred in failing to add its attorney fees to the damages award in the section 998 analysis.

*The Trial Court's Section 998 Determination Is Valid*

The trial court determined that Murphy failed to overcome the $85,000 settlement offer made by Fineline. As shown above, Murphy has not demonstrated an error in the trial court's determination. Although Murphy is entitled to add its preoffer costs to the damages award, the trial court's determination that it was not the party prevailing on the contract means those costs cannot include preoffer attorney fees. Murphy has not therefore demonstrated that it is entitled to costs exceeding those needed to show its final award exceeded Fineline's settlement offer.

## Challenges to Costs Awarded to Fineline

In addition to arguing it was the prevailing party, Murphy also attacks 16[8] categories of costs awarded to Fineline by the trial court. As noted above, Murphy's arguments on these points generally lack substantial argument and legal or factual citations. Despite these failings, the court considers Murphy's contentions as to the extent understood.

---

[8]     Much like Murphy's briefing in the first appeal, Murphy's arguments take the form of brief numbered points. Murphy's first direct attack on a cost award comes in the third point.

17.

*Point No. 3:  Costs Referencing Jessen*

Murphy alleges $3,940 in costs, which refer to an independent inventor on the underlying technology named Jessen, should be disallowed as unauthorized by section 1033.5.  In its reply brief, Murphy identifies these costs in detail, with proper citations to the record.  Doing so reveals that these costs are actually attorney fees awarded under section 1033.5, subdivision (10)(a).  Thus, contrary to Murphy's facial claim, such costs are authorized by section 1033.5, provided they are reasonable attorney fees authorized by the contract.  On this later point, Murphy makes no direct argument, although Murphy does generally argue that fees associated with a third-party transaction should not be charged to Murphy.  As noted above, the contract included an award of reasonable attorney fees to the prevailing party.  Murphy does not demonstrate the trial court abused its discretion in determining these fees, potentially related to Fineline's scope of liability through the litigation, were reasonable.

*Point No. 4:  Sanctions as Costs*

Murphy contends the trial court awarded Fineline $2,000 in costs that were incurred as sanctions "by the court for discovery abuse."  Fineline responds that this cost is permitted under section 1033.5, subdivision (a)(16), which allows for  "[a]ny other item that is required to be awarded to the prevailing party pursuant to statute as an incident to prevailing in the action at trial or on appeal."  However, Fineline cites to no requirement that a prevailing party be reimbursed for past discovery sanctions.  Thus, the only authorization for such an award would be the court's inherent discretion under section 1033.5, subdivision (c)(4), which also requires such costs to be reasonably necessary to the conduct of the litigation under section 1033.5, subdivision (c)(2).  Fineline makes no argument, and this court has found no authority indicating, that discovery sanctions can be deemed reasonably necessary costs to a litigation.  Thus, the court erred in awarding this cost.

*Point No. 5:  Joint Defense Agreement Fees*

Murphy next challenges $880 in attorney fees related to the preparation of a joint defense agreement, arguing it should not have to pay for that decision and that such costs are not allowed under section 1033.5.  As noted above, attorney fees are permitted if reasonable under the contract and Civil Code section 1717.  Murphy does not demonstrate the trial court abused its discretion in determining these fees, related to defending the action, were reasonable.

*Point No. 6:  Federal Court Filings and Fees*

Murphy next argues that $3,252.50 in fees awarded to Fineline relate not to this litigation, but to separate patent matters proceeding in federal court.  In response, Fineline concedes these fees and costs relate to proceedings in a different court but argues Murphy brought these costs upon itself by seeking to improperly remove the action.  This court agrees that filing costs in a federal action are not costs awarded to a prevailing state court party.  This court has identified no basis upon which fees and costs associated with actions other than that for which Fineline was deemed the party prevailing on the contract could be awarded.  The trial court erred in awarding these costs.

*Point No. 7:  Patent Fees*

Murphy next challenges $7,250 in what it calls "federal patent costs."  Simply arguing it is "not allowed under [section ]1033.5."  Fineline responds that such costs are actually fees incurred as Fineline dealt with Murphy's attempts to introduce federal patent claims into the state litigation.  As noted above, attorney fees are permitted if reasonable under the contract and Civil Code section 1717.  Murphy does not demonstrate the trial court abused its discretion in determining these fees, potentially related to Fineline's scope of liability in the case, were reasonable.

*Point No. 8:  Pro Hac Vice Costs*

Relying on a Ninth Circuit case and claiming that *pro hac vice* counsel argued no important motions, Murphy challenges $2,704.35 in "pro hac vice" costs.  (Boldface,

19.

underlining, & capitalization omitted.) Fineline responds that these costs were incurred in response to Murphy's attempt to introduce patent disputes into the licensing litigation and states they are permitted as filing fees and attorney fees and costs. Items not specifically allowable under section 1033.5, subdivision (a) and not prohibited under section 1033.5, subdivision (b) may be recoverable in the discretion of the court if reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation. (§ 1033.5, subd. (c)(2).) Murphy has not demonstrated such fees and costs were not reasonably necessary to the litigation and we find no abuse of discretion. Murphy's citation to *Kalitta Air L.L.C. v. Central Texas Airborne System Inc.* (9th Cir. 2013) 741 F.3d 955 is not to the contrary as that case focused on a federal authorization for "fees of the clerk" and did not include a catchall provision like the one that exists in California law. (*Id.* at p. 958.)

Point No. 9: Fineline Factory Visit Costs

Arguing "[a] Fineline site visit should be on their dime and time," Murphy challenges $2,105 in attorney fees associated with a "site visit to review boats." As noted above, attorney fees are permitted if reasonable under the contract and Civil Code section 1717. Murphy does not demonstrate the trial court abused its discretion in determining these fees, related to defending the action, were reasonable.

Point No. 10: Fees and Costs Regarding Attorney Deposition

Murphy argues that $4,897.77 in deposition fees and costs should not have been awarded because the deposition noticed was that of trial counsel. Fineline responds that trial counsel had been an integral part of the case, going so far as instructing witnesses how to testify and drafting documents relied upon by Murphy's expert. The costs and fees are authorized under section 1033.5, subdivisions (a)(3), relating to deposition recording and travel costs, (a)(4), relating to service costs, and (a)(10), relating to the terms of the contract. The trial court was presented with this dispute and necessarily determined the fees and costs were reasonable. Murphy's bare claim that seeking to

20.

depose opposing counsel is improper is insufficient to demonstrate the trial court abused its discretion in this instance, as there are legitimate circumstances in which such depositions may be appropriate or, as implied in this case, appropriately investigated.

*Point No. 11: Alleged Convenience Fees*

Murphy next challenges $6,373.30 in attorney fees related to miscellaneous motions such as ex parte and "shorten time" requests, as well as $688 in costs for CourtCall access, calling these types of costs and fees convenience fees that could have been avoided. Only in reply does Murphy contend that other means of attendance were available and that CourtCall costs should be considered equivalent to disallowed telephone charges under section 1033.5, subdivision (b)(3). Murphy has thus failed to demonstrate any error. The trial court was in the best position to determine whether these charges were appropriate in the context of the litigation and ultimately awarded them. Further, CourtCall costs are not costs for using a telephone, but appearance costs and thus are within the trial court's discretion under section 1033.5, subdivision (c). We see no abuse of discretion.

*Point No. 12: Expert Witness Fees*

Murphy's full argument is contained in the header which states "This court did not order any fees of expert witnesses so they are not allowable under [section ]1033.5." (Boldface & underlining omitted.) Murphy presumedly means the trial court did not order the fees. Fineline responds by noting that these requests are not related specifically to expert witness costs, but to attorney fees associated with expert witness matters. This court's review of the record shows roughly $26,000 in costs paid to an expert and the remainder in fees.

Although expert fees are not normally compensable when the expert has not been appointed by the court, section 998, subdivision (c)(1) provides in relevant part that "the court …, in its discretion, may require the plaintiff to pay a reasonable sum to cover postoffer costs of the services of expert witnesses … actually incurred and reasonably

21.

necessary in either, or both, preparation for trial … or during trial … of the case by the defendant." Murphy fails to explain why this provision would not support the direct costs awarded. The remaining fees are authorized under the contract. Murphy has thus failed to demonstrate an error in the trial court's award.

*Point No. 13:  Failed Motions to Compel*

Murphy takes issue with attorney fees awarded for motions to compel filed in the litigation on the ground that discovery motions "already account for the prevailing party with monetary sanctions." However, as noted above, the contract calls for an award of reasonable attorney fees. Murphy's argument contains no citation to case law in any context which supports the claim that attorney fees incurred for discovery motions are not recoverable because other sanctions for discovery violations exist. This court has likewise found no support for this assertion. Rather, as with other fees, the primary question is whether they were reasonable. Murphy has failed to demonstrate the fees incurred here were unreasonable.

*Point No. 14:  Other Motions*

Murphy's next point seeks to exclude $4,727.50 in fees on the ground that "[m]otions not filed and motions to quash that were not successful should not be costs to recover." As noted above, attorney fees are permitted if reasonable under the contract and Civil Code section 1717. Murphy does not demonstrate the trial court abused its discretion in determining these fees were reasonable. Many reasonable motions may be started but not filed for legitimate reasons, nor is failure of a motion a de facto indicator the motion was not reasonable. We see no reason to conclude the trial court abused its discretion here.

*Point No. 15:  Block Billing Claim*

Murphy challenges $8,497.50 in billing entries, claiming that "Plaintiff cannot determine the costs associated with each activity" in the seven items noted because of block billing. Despite Murphy's claim block billing is wholly improper, "[t]rial courts

22.

retain discretion to penalize block billing when the practice prevents them from discerning which tasks are compensable and which are not." (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1010.) Here, the trial court's award suggests it had no difficulty determining the tasks identified were compensable and while our independent review shows some block billing, the tasks identified are sufficiently clear that we see no abuse of discretion in the trial court's order.

      *Point No. 16: Entries that Make No Sense at All*

      Murphy contends that three identified entries—totaling slightly more than $1,500—should be excluded because they make no sense. One entry refers to "Falfalios schedules," another to a validity motion Murphy argues was never filed, and a third to a "KJ" that Murphy contends is a third party. Fineline responds the terms are insider phrases that refer to the case and that the motion was one of many filed in the case. The trial court's award of these fees suggests it agreed with Fineline's explanations and determined the fees were reasonable. We see no basis in Murphy's lack of understanding to conclude the trial court abused its discretion.

      *Point No. 17: Costs Unrelated to the Case*

      In this challenge, Murphy identifies a single charge it claims could not relate to this case. In response, Fineline explains, as it did to the trial court, that this charge was entered incorrectly and did, in fact, relate to this case. In reply, Murphy accepts this explanation. We find no abuse of discretion.

      *Point No. 18: Another No Sense Argument*

      In this challenge, Murphy identifies a fee of $351 for drafting an "argument regarding jurisdiction for Reply in support of Motion to tax costs" and argues this cannot be awarded because jurisdiction was settled with the filing of the complaint. It is unclear from the record if this claim was presented to the trial court, and the parties appear to disagree on whether it was even included in the final award, but this court discerns no basis to overturn a determination that the fee was reasonably incurred based on a single

23.

reference to "jurisdiction" in the description. Thus, if awarded, this court sees no abuse of discretion.

*Point No. 19: References to County of Tulare*

Finally, Murphy challenges an entry for $702 which states, "Further review of documents for production to County of Tulare," because the County of Tulare was never a part of the litigation. As with the other costs rejected because they were not incurred in connection with the present case, to the extent this cost was awarded for actions taken in a separate case, it would constitute an abuse of discretion. The parties dispute, however, whether this cost was included in the final award based on the timing of when the cost was incurred. Thus, we find that awarding this cost would constitute an abuse of discretion and leave it to the trial court to strike this amount if it was previously awarded.

*Summary*

Upon review of Murphy's arguments, this court identifies $5,252.50 in improperly awarded costs and $702 in potentially improper costs. Murphy has failed to demonstrate error in the remaining fees and costs awarded.

## **Issues Overlapping with the First Appeal**

In addition to the prevailing party and costs issues, Murphy's brief raises several issues that are mirror images of issues raised in the first appeal. These include issues with the trial court's underlying judgment, its denial of Murphy's postjudgment motions, and the trial court's failure to recuse. Fineline objects to these issues, noting that they are already before this court in the first appeal and contending it is improper to re-raise them in this appeal under the one-appeal rule. We agree that these issues are not properly raised in this appeal.

This court lacks jurisdiction to hear issues raised in the first appeal in this appeal. A timely notice of appeal suspends the trial court's jurisdiction over the cause and vests jurisdiction in the appellate court. (*Adoption of Alexander S.* (1988) 44 Cal.3d 857, 864.) Thus, subject to certain exceptions not applicable here, "the perfecting of an appeal stays

24.

proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby." (§ 916, subd. (a).) The rule depriving the trial court of subject matter jurisdiction during the pending appeal is intended to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided and prevents the trial court from rendering an appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it. (*In re Marriage of Horowitz* (1984) 159 Cal.App.3d 377, 381.)

As noted in the first appeal, Murphy has timely appealed from the original judgment and postjudgment motions; arguing that the postjudgment motions were denied by operation of law prior to the trial court's orders appealed from here. After the perfection of an appeal, a trial court lacks jurisdiction to vacate or amend the judgment from which the appeal has been taken (*Laidlaw Waste Systems, Inc. v. Bay Cities Services, Inc.* (1996) 43 Cal.App.4th 630, 641) unless the judgment or order is wholly void (*Betz v. Pankow* (1993) 16 Cal.App.4th 931, 938). There is no indication in the record that Murphy's appeals of either the amended judgment or the orders on the postjudgment motions are permitted. Moreover, even if the amended judgment were proper, Murphy's appeal of it would be untimely as it is well settled "that '[w]here the judgment is modified merely to add costs, attorney fees and interest, the original judgment is not substantially changed and the time to appeal it is therefore not affected.' [Citations.] 'When a party wishes to challenge both a final judgment *and* a postjudgment costs/attorney fee order, the normal procedure is to file *two separate appeals*: one from the final judgment, and a second from the postjudgment order.' " (*Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 222, second bracketed insertion added.) Finally, this court struck Murphy's "Nota Bene" argument regarding the trial court's failure to recuse itself as nonappealable in the first appeal. Murphy makes no argument in seeking this appeal which would overcome that ruling. Accordingly, Murphy's arguments are considered in the first appeal, but not here.

25.

This does not affect Murphy's appeal of the cost and fee awards, as those are appealable as orders entered after the judgment under section 904.1, subdivision (a)(2). (*Citizens Against Rent Control v. City of Berkeley* (1986) 181 Cal.App.3d 213, 223.)

**DISPOSITION**

The amended judgment is vacated as void. The trial court's prevailing party determination under Code of Civil Procedure section 1032 is reversed. The trial court's prevailing party order under Code of Civil Procedure section 998 and its party prevailing on the contract determination under Civil Code section 1717 are affirmed. The trial court's order awarding costs is reversed. Consistent with this court's opinion, the matter is remanded for the trial court to strike the costs awarded in points Nos. 4, 6, and 19 to the extent awarded, to calculate and award Murphy's preoffer costs, and to enter a final costs award.

The parties shall bear their own costs.

HILL, P. J.

WE CONCUR:


LEVY, J.


PEÑA, J.

26.