Filed 4/24/25  Restoration Management Co. v. Lee CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RESTORATION MANAGEMENT COMPANY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAMES LEE, as Trustee, etc., et al.,<br><br>    Defendants and Appellants. | A168565, A168650<br><br>(San Francisco County<br> Super Ct. No. CGC-17-563187)<br><br>**ORDER MODIFYING OPINION** |

BY THE COURT:

It is ordered that the opinion filed herein on April 1, 2025, be modified as follows:

On page 4, in the first sentence of the last paragraph, remove the apostrophe from Lees' to read:  Lees.

On page 8, last sentence of the first paragraph, change punctuation in the name Lee's to read:  Lees'.

On page 14, first sentence in the second paragraph, correct the name Robin to read:  Robins.

On page 18, fourth line from the top of the page, change the word resolve to resolving.

1

There is no change in judgment.


Dated: _____                    _____

RICHMAN, ACTING P. J.

Filed 4/1/25  Restoration Management Co. v. Lee CA1/2 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| RESTORATION MANAGEMENT COMPANY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JAMES LEE, as Trustee, etc., et al.,<br><br>        Defendants and Appellants. | A168565, A168650<br><br>(San Francisco County<br> Super Ct. No. CGC-17-563187) |

In these consolidated appeals, defendants James Lee, as trustee of the Paula Lee Residuary Trust UTD 11/28/1995 (the trust), and Michael Lee,[1] the trust's property manager, appeal from judgment in favor of plaintiff Restoration Management Company (Restoration) and orders denying the Lees' motions for new trial and judgment notwithstanding the verdict. Considering the Lees' arguments, we find no error and affirm.

## BACKGROUND

On April 11, 2017, an electrical fire broke out in the basement of a commercial building owned by the trust and managed by Michael.  The fire caused damage to Alfred's Steakhouse (Alfred's), a restaurant that leased the

---

[1] For clarity, we refer to James and Michael individually by their first names and together as the Lees.  We intend no disrespect.

1

basement and ground floor of the building, as well as the Balmoral Hotel (Balmoral), a single room occupancy hotel situated above Alfred's and owned by James.[2]

Restoration provides emergency-related damage control for residential and commercial structures impacted by fire or flood. On the night of the fire, Balmoral's manager, Hazel Chen, signed an "Emergency Service Agreement" with Restoration, authorizing it "to proceed with its recommended procedures to preserve and protect the Property from further damage," including a "smoke alarm survey, structure cleaning/Air Scrubbers." Chen signed as an "Authorized Agent" of the Lees.

The following day, April 12, Alfred's entered into a similar emergency service agreement with Restoration for smoke and water damage to "the Property," including "Water mitigation/Extraction/drying [the] Structure," as well as an "electrical survey." Alfred's agreement was signed by Alfred's general manager Lisa Robins, also denoted as "Authorized Agent," and Jacob Arendt of Restoration.

Both Balmoral's agreement and Alfred's agreement used the same fill-in-the-blank form with identical preprinted terms. As relevant, both agreements included a "Contract Price" clause, explaining services were being provided on "an emergency basis; therefore, it may be impossible to provide an accurate estimate" and the customer "agrees to pay [Restoration] for its work based upon [Restoration's] standard and usual charges for similar emergency services." The agreements also included an "Extra Work

---

[2] Although a single building, the property was comprised of several interconnected commercial units with individual access points and addresses. Alfred's address was 659 Merchant Street in San Francisco, and Balmoral's address was 668 Clay Street.

and Change Orders" provision, which detailed the requirements for change orders to "become part of the contract."

The San Francisco Department of Building Inspection "red tagged" the property and required an electrical survey of the building to determine the extent of the damage before Restoration's work could begin. For Balmoral, Restoration's work consisted of placing air scrubbers throughout the hotel to eliminate the smell of smoke. For Alfred's, Restoration cleaned both the contents of the restaurant and the structure of the building. Over the course of the roughly 10-week project, Michael inspected the basement of the building four or five times and saw Restoration working on the property.

On May 23, 2017, as Restoration was "wrapping up the structural cleaning in the basement of Alfred's," Arendt sent an e-mail to the Lees' insurer's third-party claims adjustor Dan Christensen, copying the Lees and requesting "authorization to move forward" with five tasks related to cleaning the building's structure. On May 26, Michael responded: "Hi Jacob, [¶] If it fall[s] within the responsibility portion of the landlord, then please proceed with the remaining clean up from the fire damage." Christensen also told Arendt to present the Lees with any documentation to pass along to their insurer, Lloyd's of London.

Restoration completed cleaning the property and its contents by July 2017. The invoice for "Odor Control" at Balmoral was $879, which the Lees paid. The sole and final invoice for Restoration's work at Alfred's included two charges: $72,424.16 for "Content Cleaning" and $299,086.16 for "Structure Cleaning," neither of which were paid.[3] After completing the

_____

[3] According to Restoration, common practice is for the landlord to pay the cost for cleaning the building's structure, while the tenant covers the costs of cleaning and damage to the contents. Alfred's filed for bankruptcy in

3

remediation work, Robins asked Restoration to replace a door "on the Clay side" of the building, i.e., Balmoral's side, which had been damaged in the fire. Restoration separately invoiced the Lees $5,135.74 for replacing the door; the Lees paid the door replacement invoice and were reimbursed by Lloyd's of London. The Lees' insurer otherwise denied coverage for Restoration's work.

On October 18, 2017, Restoration filed this action against the Lees for breach of "an oral contract (confirmed by a purchase order)," seeking $304,221.90 in damages. Restoration's first amended complaint, which was the operative complaint at trial, alleged breach of a "written contract and work order."[4]

On May 31, 2023, a jury was sworn, and trial began on June 8. On June 12, the third day of trial, Restoration moved to amend its complaint to conform to proof, which the court granted. The second amended complaint added a cause of action for "common count: services provided" and allegations regarding "quantum meruit" and "unjust enrichment."

On June 15, 2023, the jury returned verdicts for Restoration, finding the Lees' liable for $304,221.90 on both the breach of contract and common count claims and awarding $5,125.74 in damages for "Restitution From Unjust Enrichment." Because the parties had agreed to submit all claims to the jury and resolve any potential inconsistencies through an election of damages, Restoration requested entry of judgment on the breach of contract claim only. The court accordingly entered judgment of $229,221.90 in favor of

---

2021; Restoration did not attempt to recover the content cleaning portion of the invoice from the Lees.

[4] Restoration's initial and first amended complaints also asserted a claim for mechanic's lien foreclosure, which was withdrawn before trial.

4

Restoration, deeming it the prevailing party entitled to $12,697.34 in costs, and awarding $167,798.02 in prejudgment interest.[5]

The Lees moved for a new trial and for judgment notwithstanding the verdict, both of which the court denied.

The Lees filed timely notices of appeal from the entry of judgment (A168565) and the orders denying their posttrial motions (A168650),[6] which we consolidated.

## DISCUSSION

The Lees challenge Restoration's amendment to its complaint, the sufficiency of the evidence at trial, and the jury instructions and verdict. Our review begins from the fundamental principle that the trial court judgment is presumed to be correct, and the Lees bear the burden of demonstrating reversable error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.)

### I. Restoration's Second Amended Complaint

The Lees argue the trial court abused its discretion by permitting Restoration to amend its complaint to allege a common count for services rendered[7] because the claim is barred by the statute of limitations and by the

---

[5] The court reduced the jury's award by $75,000 to account for a pretrial settlement. The court calculated prejudgment interest based upon the total award up to the date of the settlement and calculated interest on the net amount thereafter.

[6] Although the denial of the Lees' motion for new trial is not independently appealable, it may be reviewed as part of the appeal from the underlying judgment. (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 19.)

[7] "A common count is not a specific cause of action . . . rather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness." (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 394.) Consistent with the parties' briefs, we refer to

5

existence of an express contract. We review the trial court's grant of leave to amend for abuse of discretion and find none. (*North Pacifica LLC v. California Costal Com.* (2008) 166 Cal.App.4th 1416, 1427.)

First, the Lees contend the trial court abused its discretion by permitting Restoration to allege a "quantum meruit/common count" claim because the statute of limitations had run by June 2023, when Restoration amended its complaint. Restoration asserts the claim relates back to the filing of its original complaint and is therefore timely. We agree the amendment relates back, thereby avoiding any time bar.

"The relation-back doctrine deems a later-filed pleading to have been filed at the time of an earlier complaint which met the applicable limitations period, thus avoiding the bar." (*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1278.) A pleading relates back when it (1) rests on the same general set of facts, (2) involves the same injury, and (3) refers to the same instrumentality as the original claim. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 408–409.)

Here, Restoration's breach of contract claim in the initial complaint and its subsequent quantum meruit claim both arise from the same facts (Restoration's work at Alfred's), involve the same injury ($304,221.90 in unpaid work), and refer to the same instrumentality (the Lees' failure to pay). (*Norgart v. Upjohn Co., supra*, 21 Cal.4th at pp. 408–409.) While the initial complaint alleged the parties "entered into an oral contract (confirmed by a purchase order)," the factual basis—Restoration's rendition of services with the expectation of payment—remained the same; the only change was the legal basis for the expectation of payment. (*Pointe San Diego Residential*

---

Restoration's amended cause of action as a common count and quantum meruit claim interchangeably.

6

*Community, L.P. v. Procopio, Cory, Hargreaves & Savitch, LLP* (2011) 195 Cal.App.4th 265, 277 ["An amended complaint relates back to an earlier complaint if it is based on the same general set of facts, even if the plaintiff alleges a different legal theory or a new cause of action"].) Moreover, the initial complaint expressly alleged Restoration "furnished all necessary labor and materials" to the Lees for a "net sum of approximately $304,221.90," which "is still due and owing" notwithstanding Restoration's "demand" to pay. These allegations would be sufficient to state a common count claim. (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 460 ["The only essential allegations of a common count are '(1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment' "].)[8]

Second, the Lees argue the trial court abused its discretion in allowing Restoration to assert a common count "when the law clearly prohibits both an express and implied contract to simultaneously exist." The argument is easily disposed of since "a party may plead in the alternative and may make inconsistent allegations." (*Adams v. Paul* (1995) 11 Cal.4th 583, 593; accord, *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2016) 6 Cal.App.5th 1207, 1222–1223 ["a plaintiff may plead inconsistent causes of action for breach of contract and common count"], affd. (2018) 4 Cal.5th 637.)

---

[8] The Lees assert Restoration's earlier complaint lacked allegations that the Lees "requested" Restoration's services and "the reasonable value of the services" provided. The argument is based on the Judicial Council of California Civil Jury Instructions (CACI), which provide model instructions on the elements required to be proven at trial, not the factual allegations required to state a claim. (See *People v. Morales* (2001) 25 Cal.4th 34, 48, fn. 7 ["jury instructions, whether published or not, are not themselves the law, and are not authority to establish legal propositions or precedent"].)

7

The Lees' reliance on *Hedging Concepts, Inc. v. First Alliance Mortgage Co.* (1996) 41 Cal.App.4th 1410, is misplaced. In *Hedging Concepts, Inc.*, the "trial court made a factual finding that the parties had formed an actual, not an implied, contract" governing the terms of payment, which conflicted with the court's ruling that the defendant nevertheless owed "an equitable implied-in-law duty" regarding payment. (*Id.* at p. 1420.) But, as a pleading matter, California courts have "consistently held that, where an express contract is fully executed and nothing remains but the payment of money, it is proper to plead a common count, omitting any mention of the express contract." (*Benson Electric Co. v. Hale Bros. Associates, Inc.* (1966) 246 Cal.App.2d 686, 697.) Here, Restoration amended to conform to proof based on the Lee's defense denying the existence of an express contract; therefore, the amended allegations present no inconsistency.

## II. Substantial Evidence: Condition Precedent and Acceptance

The Lees challenge the sufficiency of the evidence supporting the breach of contract verdict and judgment on two grounds—compliance with the purported condition precedent (i.e., the extra work and change orders provision) and acceptance. Addressing the arguments in the order presented, we reject the Lees' interpretation regarding a condition precedent and find substantial evidence supports the jury's finding of acceptance.

### A. Condition Precedent: The Extra Work and Change Orders Provision

According to the Lees, the five tasks in Arendt's May 23 e-mail requesting "authorization to move forward" constituted extra work subject to the extra work and change orders provision in the emergency service

agreements.[9]  The Lees assert there is no evidence that Restoration complied with that provision, which the Lees claim is a precondition to payment.  We interpret the Lees' argument to challenge the sufficiency of the evidence, as well as the construction of the emergency service agreements.

In interpreting the agreements, we apply a de novo standard "only when it is based on the words of the instrument alone, when there is no conflict in the extrinsic evidence, or when a determination was made based on incompetent evidence."  (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395.)  Otherwise, where the jury has made determinations based on the credibility of extrinsic evidence, we review for substantial evidence.  (*Ibid.*; *Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1188.)

The Lees argued to both the jury and judge that "there was no evidence that Restoration complied with the extra work/change order requirement," and the jury was instructed on the Lees' theory that Restoration failed to comply with the extra work provision and "therefore they [Restoration] are not entitled to payment for the changed or additional work they performed."  Conversely, Restoration maintained the emergency service agreements were "bill[ed] on a time and material basis," and thus the jury received instructions according to Restoration's theory that "the change-order requirements do not apply."  The jury ultimately found Restoration performed all "the significant things that the contract required" and "all the

---

[9] The provision reads:  "Extra Work and Change Orders become part of the contract once the order is prepared in writing and signed by the parties. The order must describe the scope of the extra work or change, the cost to be added or subtracted from the contract, and the effect the order will have on the schedule of progress payments."

conditions that were required for the Lees' performance occur[ed]." The court then denied the Lees' posttrial motions, which made the same argument.

Both the jury's and the court's decisions are supported by substantial evidence. (*Wilson v. County of Orange, supra,* 169 Cal.App.4th at p. 1188; *Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68.) Arendt testified that Restoration's services were provided on an emergency, time and materials basis, which was "standard practice in the industry," and thus change orders were not needed "because you are recording everything as you go along." Arendt's testimony is consistent with the emergency service agreements, which did not include or attach any contract prices or detailed scopes of work and expressly state the "Customer understands that services are being provided on an emergency basis; therefore, it may be impossible to provide an accurate estimate. Customer agrees to pay [Restoration] for its work based upon [Restoration's] standard and usual charges for similar emergency services." According to industry practice, Restoration's final invoice distinguished between the work performed relating to the building's "Content" as compared to the "Structure" to facilitate allocation of the bill between tenant and owner. Similarly consistent with a "time and materials" contract, Restoration's invoice, or "billing package," detailed the hours worked, the nature of the work, the billing rate or equipment costs, and the total amount owed.

Even under a de novo review, the Lees present an unreasonable interpretation of the emergency service agreements.[10] A condition precedent is, as relevant here, an act of a party that must be performed before the

---

[10] Since the matter was submitted to the jury, we doubt a de novo standard applies. (*City of Hope National Medical Center v. Genentech, Inc., supra,* 43 Cal.4th at p. 395.) Regardless, as explained, the Lees' interpretation is unreasonable.

contractual right accrues or the contractual duty arises. (*Karpinski v. Smitty's Bar, Inc.* (2016) 246 Cal.App.4th 456, 464.) The existence of a condition precedent depends upon the intent of the parties as evidenced by the words of the contract. (*Ibid.*) But conditions precedent are disfavored, and contract clauses will not " 'be construed as conditions precedent unless such construction is required by clear, unambiguous language.' " (*JMR Construction Corp. v. Environmental Assessment & Remediation Management, Inc.* (2015) 243 Cal.App.4th 571, 594, quoting *Alpha Beta Food Markets v. Retail Clerks Union Local 770* (1955) 45 Cal.2d 764, 771.)

Here, there is no basis for interpreting the extra work and change orders provision as a condition precedent to the Lees' performance, i.e., payment.[11] The emergency service agreements do not contain a fixed contract price or timeline that would necessitate change orders, which is consistent with Restoration's testimony that the agreements were to bill on a time and material basis. Moreover, assuming the change orders provision even applies, nothing in the plain language of the agreements suggests the Lees' payment obligations are "subject to" or "conditioned on" it. (*In re Marriage of Hasso* (1991) 229 Cal.App.3d 1174, 1181 [finding "no basis" for construing a provision as a condition precedent because "the agreement contains no language that it is 'subject to' or 'conditioned on' " a conditional event].) Instead, the "PAYMENT" clause provides the customer "is directly liable and responsible to pay [Restoration] for all services" without qualification; it does not reference the change orders provision or any other

---

[11] Preliminarily, both emergency service agreements expressly include "structure" cleaning of "the Property." The Lees suggest the tasks in Arendt's e-mail were "extra" work because otherwise "there would be no need for [Restoration] to ask for authority or permission to perform this work." We find the argument unpersuasive but immaterial to the analysis.

11

condition precedent to payment.  Ultimately none of the Lees' cited authority supports their apparent argument that an unexecuted change order excuses their obligation to pay entirely.

## B. Acceptance

The Lees also argue the trial court should have granted their posttrial motions "based on the absence of any substantial evidence relating to the element of acceptance in contract formation."  Focusing on the amended complaint's specification of a "written" contract, the Lees assert the only evidence of acceptance of any contract related to Alfred's was Michael's May 26 e-mail authorizing Restoration to proceed if the work fell within the "responsibility portion of the landlord."  The Lees argue Michael's response was a qualified acceptance amounting to a counteroffer, rather than acceptance.  We review the denial of the Lees' motion for judgment notwithstanding the verdict for substantial evidence.  (*Jorge v. Culinary Institute of America* (2016) 3 Cal.App.5th 382, 396.)

"An essential element of any contract is the consent of the parties, or mutual assent," which "usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror."  (*Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 270–271.)  Acceptance of an offer may be found from the circumstances, and the interpretation of a purported acceptance is a question of fact for the trial court.  (*Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1385; *Guzman v. Visalia Community Bank* (1999) 71 Cal.App.4th 1370, 1376.)  We conclude substantial evidence supports the jury's finding of acceptance.

On the night of April 11, Michael spoke with "one of the managers" of Balmoral and learned the hotel had been evacuated due to a fire in the basement of Alfred's.  The fire originated in an electrical panel and damaged

12

the building's structure, resulting in the property being "red tagged" by the San Francisco building inspector, who required an electrical survey before remediation work could begin.

That same night, Balmoral's manager entered into an emergency service agreement with Restoration—authorizing Restoration "to preserve and protect the Property" including "structure cleaning"—which Michael conceded at trial was a contract between the Lees and Restoration. The next day, Restoration obtained Alfred's agreement for work in the basement.

Arendt spoke with Michael after the start of the project as "an introduction" to explain the scope of remediation; the two discussed the time and materials nature of the agreements and the Lees' insurance adjustor, who told Arendt to "present" the Lees with Restoration's invoice and the Lees would "pass it along to Lloyd's of London."

Michael also inspected Alfred's basement the day after the fire, April 12, and observed the damage to the building and Restoration's trucks and workers at the property. Michael returned to inspect the property roughly three or four more times over the course of Restoration's work. Thus, consistent with the agreements and the jury instructions,[12] substantial evidence supports the jury's finding of contractual acceptance.

We are not persuaded by the Lees' challenges on appeal. First, the Lees contend "there was no evidence of unconditional acceptance" because, in his May 26 e-mail, Michael agreed " 'to be bound only on certain conditions,' " i.e., *if* it fell within the landlord's responsibility. The existence of consent is

---

[12] "Ordinarily, if a person does not say or do anything in response to another party's offer, then the person has not accepted the offer. However, if [Restoration] proves that both they and the Lees understood silence or inaction to mean that the Lees had accepted [Restoration's] offer, then there was an acceptance." (Capitalization omitted.)

13

determined by objective criteria, rather than subjective or unexpressed intent. (*Doe v. Massage Envy Franchising, LLC* (2022) 87 Cal.App.5th 23, 30.) While the Lees argue Michael's May 26 e-mail response was a counteroffer, Arendt testified the e-mail merely confirmed "everybody was on the same page about responsibility." Further, contrary to the Lees' assertion, neither Restoration's nor Michael's May 26 e-mails varied or changed any of the express terms of the emergency service agreements and instead were consistent with the common practice of the landlord paying for the structural cleaning and the tenant paying for the cleaning of the contents. (*Guzman v. Visalia Community Bank*, *supra*, 71 Cal.App.4th at p. 1376 ["it is not necessarily true that any communication other than an unequivocal acceptance is a rejection" or counteroffer].)

Likewise, the Lees make much ado about the different addresses on the emergency service agreements, contending that while the Lees may have agreed, through Chen, to work performed at Balmoral, the designation of Robin as "authorized agent" on Alfred's agreement does not mean they agreed to the work to be performed at Alfred's. We are not concerned. Both agreements cover "service[s] performed at the property" and authorize Restoration to "proceed with its recommended procedures to preserve and protect the Property . . . ." Micheal testified that the property was "one building," and, according to Arendt, the fire resulted in the entire property being "red tagged" until it "was safe to occupy." Further, in March 2017, James had entered into an agreement for the building's sale, which did not close until September 2017. The purchase documents included both Alfred's and Balmoral among the three addresses listed for the property: 700–710 Kearny Street, 662–688 Clay Street, and 659 Merchant Street. Thus, substantial evidence supports the interpretation of "Property" in the

14

emergency service agreements consistent with the given jury instruction that "[Restoration] claims that the word 'Property' means the entire property owned by the [Lees], including the restaurant."

Because we reject the Lees' interpretation of the emergency service agreements and conclude substantial evidence supports the jury's finding of acceptance, we do not reach the Lees' argument regarding prejudice.

### III.  Instructional Error

Last, the Lees argue that instructing the jury on oral contracts (CACI No. 304) and implied-in-fact contracts (CACI No. 305) "was error, based on the pleadings and the absence of substantial evidence for those two theories." The Lees relatedly claim that "the breach of contract and quantum meruit verdicts are inconsistent."  We find no error in the jury instructions and further find the Lees waived their right to challenge the verdict form.

We consider claims of instructional error de novo.  (*Mansur v. Ford Motor Co.* (2011) 197 Cal.App.4th 1365, 1373.)  We view the evidence in the light most favorable to the claim of error, but we do not reverse absent prejudice.  (*Veronese v. Lucasfilm Ltd.* (2012) 212 Cal.App.4th 1, 4–5, 30.) CACI No. 304 provides contracts "may be written or oral," or "partly written and partly oral."  Implied-in-fact contracts, according to CACI No. 305, "can be created by the conduct of the parties, without spoken or written words" and "are just as valid as contracts formed with words."  Thus, the jury "should consider the conduct and relationship of the parties as well as all the circumstances of the case" in deciding whether an implied-in-fact contract was created.

In terms of pleadings, the Lees argue the operative second amended complaint alleged breach of a written agreement only, and thus the instructions for breach of oral or implied-in-fact contracts were improper.

15

But this contention ignores Restoration's common count, which " 'is a general pleading [that] seeks recovery of money without specifying the nature of the claim . . . .' " (*Title Ins. Co. v. State Bd. of Equalization* (1992) 4 Cal.4th 715, 731.) In a common count claim, it " ' "makes no difference . . . that the proof shows the original transaction to be an express contract, a contract implied in fact, or a quasi-contract." ' " (*Utility Audit Co., Inc. v. City of Los Angeles* (2003) 112 Cal.App.4th 950, 958; accord, *Weitzenkorn v. Lesser* (1953) 40 Cal.2d 778, 793 [a common count may be based upon a contract implied in fact or a contract implied in law].) Thus, while Restoration's breach of contract claim may have been based upon a written agreement, the common count alleged the Lees agreed to Restoration's services "by words, email, or conduct," warranting instructions on oral and implied contracts.

In terms of substantial evidence, the Lees claim Restoration presented no evidence of an oral or implied contract. While contracts may be "either express or implied," the terms express and implied " 'do not denote different kinds of contracts, but have reference to the evidence by which the agreement between the parties is shown.' " (Civ. Code, § 1619; *Marvin v. Marvin* (1976) 18 Cal.3d 660, 678, fn. 16.) An express contract is shown " 'by the direct words of the parties, spoken or written,' " whereas an implied contract is demonstrated " 'by the acts and conduct of the parties, interpreted in the light of the subject matter and of the surrounding circumstances.' " (*Marvin*, at p. 678, fn. 16.) Thus, "in a sense all contracts made in fact, as distinguished from quasi-contractual obligations, are express contracts, differing only in the manner in which the assent of the parties is expressed and proved." (*Ibid.*)

Here, Arendt and Michael testified that they communicated about invoices, charges, and insurance during the project. Michael was present

16

during Restoration's clean-up work, observed Restoration's trucks at the property, and inspected the basement multiple times after the fire. The Lees' claims adjuster suggested invoices should be sent to the Lees' insurer and, as Arendt testified, Restoration introduced Michael's May 26 e-mail as "confirmation that everybody was on the same page about who was paying for what." Thus, substantial evidence supported instructing the jury on the alternative theories of oral and implied-in-fact contracts. (*Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 684 ["A party is entitled to an instruction on each theory of the case that is supported by the pleadings and substantial evidence"].)

Additionally, the Lees argue the jury's verdicts on the breach of contract and common count claims are inconsistent. But the Lees cannot now challenge a verdict form they helped prepare and agreed to below. (*Mesecher v. County of San Deigo* (1992) 9 Cal.App.4th 1677, 1685–1686.) In fact, the Lees provided the initial draft of the jury verdict form, which the parties "revised . . . to include both the breach of contract cause of action and also the quantum meruit" common count "at the urging of the [Lees]." The court explained, "the parties are aware that the jurors will have to address each of those damages sections. [¶] If there is a verdict returned that has all three sections, the plaintiff will have to make a determination–an election between the damages to determine which one they wish the court to have the judgment proceed on." The Lees made no objection at the time or after the jury's verdict was read; instead, to the extent the Lees challenged the verdict form below, they did so for the first time in their posttrial motions, after the jury had been discharged, as part of their instructional error argument.

We also disagree with the Lees' contention that their objections to the quantum meruit claim and related jury instructions preserved the right to

17

challenge the verdict form. The Lees' proposed jury instructions concerned the substantive law regarding express and implied contracts, whereas the Lees agreed to *the procedure* of allowing the jury to decide all claims, even potentially inconsistent claims, and then resolve any conflicts through an election of remedies. (*Mesecher v. County of San Diego, supra*, 9 Cal.App.4th at pp. 1685–1686 [" 'Similarly an appellant may waive his right to attack error by expressly or impliedly agreeing at trial to the ruling *or procedure* objected to on appeal,' " italics added]; see also *Jentick v. Pacific Gas & Electric Co.* (1941) 18 Cal.2d 117, 121–123 [affirming judgment based on inconsistent verdict under invited error doctrine].)

## DISPOSITION

The judgment and orders denying the Lees' posttrial motions are affirmed. Restoration may recover costs of appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

_____
DESAUTELS, J.

We concur:

_____
RICHMAN, ACTING P. J.

_____
MILLER, J.

*Restoration Management Company v. Lee, as Trustee, etc., et al.*
(A168565, A168650)

19